WPW ACQUISITION COMPANY v CITY OF TROY

Docket No. 211828. Submitted May 9, 2000, at Detroit. Decided November 14, 2000, at 9:05 A.M. Leave to appeal sought.

WPW Acquisition Company brought an action in the Oakland Circuit Court against the city of Troy, seeking a declaration that MCL 211.34d(1)(b); MSA 7.52(4)(1)(b) was unconstitutional and seeking a partial refund of 1996 property taxes paid by the plaintiff to the defendant for the plaintiff's office building. The city of Troy had increased the 1996 taxable value of the building by nearly fourteen percent, well in excess of the 2.8 percent increase in the general price level, on the basis of an increase in the building's occupancy rate. In doing so, the city relied on Const 1963, art 9, § 3, as amended by Proposal A, and on MCL 211.34d(1)(b); MSA 7.52(4)(1)(b), as amended following the ratification of Proposal A. Proposal A provides that the taxable value of a parcel of property, as adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level or by five percent, whichever is less, until ownership of the parcel is transferred. MCL 211.34d(1)(b); MSA 7.52(4)(1)(b), as amended, defines "additions" to include an increase in the value of a parcel attributable to an increase in occupancy rate if a decrease in taxable value was previously allowed because of a decrease in occupancy rate. Before its amendment and at the time Proposal A was ratified, MCL 211.34d(1)(a); MSA 7.52(4)(1)(a) had defined "additions' as all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment roll. The court, Joan E. Young, J., granted summary disposition for the plaintiff, declaring subsection 34d(1)(b), as amended, unconstitutional and determining the applicable definition of "additions" to be that of the former version of subsection 34d(1)(a). Subsequently, the court, David F. Breck, J., ruled that it was without jurisdiction to hear the plaintiff's claim of partial refund because the claim is within the exclusive jurisdiction of the Tax Tribunal. The city appealed, and the plaintiff cross appealed.

The Court of Appeals *held*:

1. The trial court erred in concluding that subsection 34d(1), as amended, is unconstitutional. In light of the purpose behind Proposal A of curbing annual increases in property assessments, the Legislature's definition of "additions" in subsection 34d(1)(b), as amended, is reasonable and reflects the broad use and the plain meaning of the term "additions" in the language of Const 1963, art 9, § 3, as amended by Proposal A. The extension of the term "additions" to include increases in value attributable to increases in occupancy rate implements the intent of voters for equal application to commercial property owners where those property owners were previously allowed a decrease in taxable value because of a decrease in occupancy rate.

2. The issue of the trial court's jurisdiction over the plaintiff's claim of partial refund need not be reviewed in light of the holding that subsection 34d(1) is not unconstitutional.

Reversed.

TAXATION — REAL PROPERTY — TAXABLE VALUE — ADDITIONS — INCREASES IN OCCUPANCY RATE — PROPOSAL A.

The extension of the term "additions" to include an increase in value attributable to an increase in the occupancy of commercial property where a decrease in taxable value was previously allowed because of a decrease in occupancy rate, as provided in an amendment of the subsection of the General Property Tax Act that defines the term, is constitutional and is consistent with the purpose behind Proposal A, which amended the Michigan Constitution to provide that annual increases in the taxable value of property shall not increase by more than the increase in the immediately preceding year of the general price level or by five percent, whichever is less, until ownership of the parcel is transferred (Const 1963, art 9, § 3; MCL 211.34d[1][b]; MSA 7.52[4][1][b]).

*Honigman Miller Schwartz and Cohn* (by *Thomas J. Beale* and *Richard Bisio*), for the plaintiff.

*John J. Martin, III*, for the defendant.

Before: MARKEY, P.J., and GRIBBS and GRIFFIN, JJ.

PER CURIAM. In this case involving taxation, defendant city of Troy appeals by right the trial court's order granting summary disposition in favor of plaintiff WPW Acquisition Company after concluding that

MCL 211.34d(1)(b); MSA 7.52(4)(1)(b), as amended, was unconstitutional. Plaintiff cross appeals the trial court's order, which held that the court did not have jurisdiction to address the issue of a tax refund. Plaintiff's circuit court claims were brought on appeal from the Michigan Tax Tribunal, where this action originated. We reverse the trial court's order declaring MCL 211.34d(1)(b); MSA 7.52(4)(1)(b) unconstitutional.

The relevant facts of this case are undisputed. Plaintiff owns an office building in defendant city of Troy. In 1991, plaintiff requested a reduction in the state equalized value (SEV) of the building. This request was made, in part, because of a decrease in the occupancy of the building. Defendant's assessor reduced the SEV by twenty-three percent, from $8,606,000 to $6,546,000. Thereafter, because of an increase in the occupancy of plaintiff's building, defendant increased the taxable value of the building by about fourteen percent from $6,545,970 in 1995 to $7,434,940 in 1996. The taxable value increase occurred after Proposal A, which amended Const 1963, art 9, § 3, became effective.[1] Proposal A provides that taxable values may not increase more than the general price level in the preceding year. The price level increase applicable to the calculation of 1996 taxable values was 2.8 percent. The city of Troy increased the taxable value of the plaintiff's building taxes in excess of the 2.8 percent on the basis of the definition of the word "additions" contained in MCL 211.34d(1)(b)(vii); MSA 7.52(4)(1)(b)(vii), as amended

---

[1] The amendment was ratified on March 15, 1994, effective April 30, 1994.

by the Legislature after Proposal A was ratified. Plaintiff filed this action, challenging the tax increase as a violation of the Michigan Constitution.

Const 1963, art 9, § 3, as amended by Proposal A, provides:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. *For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred.* When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates. [Emphasis added.]

The arguments in this case involve the definition of the word "additions" as used in the above constitutional provision. At the time the electorate passed Proposal A, MCL 211.34d(1)(a); MSA 7.52(4)(1)(a) defined "additions" as

> all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the

assessment unit's immediately preceding year's assessment roll.

Approximately nine months after Proposal A was ratified, the Legislature amended MCL 211.34d(1); MSA 7.52(4)(1) and changed the previous definition of "additions." The amended statutory subsection provides, in pertinent part:

(1) As used in this section or [MCL 211.27a; MSA 7.27(1)], or section 3 or 31 of article IX of the state constitution of 1963:

(a) For taxes levied before 1995, "additions" means all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment roll.

(b) For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all of the following:

*          *          *

(vii) An increase in the value attributable to the property's occupancy rate if either a loss, as that term is defined in this section, had been previously allowed because of a decrease in the property's occupancy rate or if the value of new construction was reduced because of a below-market occupancy rate. For purposes of determining the taxable value of property under section 27a, the value of an addition for the increased occupancy rate is the product of the increase in the true cash value of the property attributable to the increased occupancy rate multiplied by a fraction the numerator of which is the taxable value of the property in the immediately preceding year and the denominator of which is the true cash value of the property in the immediately preceding year, and then multiplied by the lesser of 1.05 or the inflation rate. [MCL 211.34d; MSA 7.52(4).]

The trial court determined that the correct defini-
tion of "additions" to be applied in this case was the
definition in effect at the time of the ratification of
the amendment of Const 1963, art 9, § 3. Thus, it
found the applicable definition of "additions" to be
the former version of subsection 34d(1)(a). As a
result, the trial court found that defendant's assess-
ment of plaintiff's property was too high after 1994.
The trial court concluded that the amended statutory
subsection defining "additions" was unconstitutional
and that plaintiff was entitled to summary disposition.
Thereafter, plaintiff moved for final judgment and
summary disposition on the issue of the tax refund.
The trial court concluded that the Tax Tribunal did
not have jurisdiction over the constitutional issue, but
that the Tax Tribunal had exclusive jurisdiction over
assessments and refunds and that the determination
whether plaintiff was owed a refund was not ancillary
to the trial court proceeding. The trial court denied
plaintiff's motion for summary disposition. This
appeal and cross appeal followed.

Defendant argues that the trial court erred in con-
cluding that subsection 34d(1), as amended, was
unconstitutional with respect to its definition of
"additions" and that the trial court erred in conclud-
ing that the definition of "additions" as used in Const
1963, art 9, § 3 is that provided in subsection
34d(1)(a) before its amendment by the Legislature.
We agree. The constitutionality of a statute presents a
question of law that is reviewed de novo. *McDougall
v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).

A statute is presumed constitutional, unless its
unconstitutionality is readily apparent. *Id.* The rules
of statutory construction do not apply when the issue

involves the construction of the constitution. *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971). However, as in the construction of statutes, the primary rule of constitutional construction is to ascertain the purpose and intent as expressed in the constitutional provision. *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979). To ascertain that meaning, courts must consider the plain meaning as understood by the provision's ratifiers at the time of its adoption. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 184; 521 NW2d 499 (1994). Although intent must be inferred from the words used, those words must be applied to the subject matter and the general scope of the constitutional provision. *White, supra.* The words are to be considered in light of the provision's general purpose or the problem to be remedied by the constitution. *Id.* When the language of the constitutional provision contains technical terms and words of art, they must be given their special meanings. *Peterman, supra* at 186. As our Supreme Court stated in *Michigan Farm Bureau v Secretary of State*, 379 Mich 387, 391; 151 NW2d 797 (1967),

[a] Constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. "For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to

be conveyed." [*Id.*, quoting Cooley's Constitutional Limitations (6th ed), p 81 (emphasis deleted).]

At the time Proposal A was proposed and brought to a popular vote, the word "additions" was defined in subsection 34d(1)(a) of the General Property Tax Act. Before Proposal A passed, however, the word "additions" was not used in the prior version of Const 1963, art 9, § 3.[2] Despite the former statutory definition of "additions" contained in subsection 34d(1), we conclude that the language of the constitutional amendment left it to the Legislature to define, consistent with the ratifiers' intent, "additions," and that the amendment of § 34d[3] following ratification of Proposal A (Const 1963, art 9, § 3) is not unconstitutional.

As applied to the present case, the trial court essentially found that the term "additions" is limited to physical additions. However, the meaning of the term and its definition must be determined after considering the purpose of the constitutional amendment and the plain meaning of the term as understood by the voters at the time of ratification. *Peterman, supra* at 184; *White, supra*. It is apparent that part of the

---

[2] The prior version of Const 1963, art 9, § 3 stated:

The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates.

[3] We note that the Legislature provided definitions of other terms in MCL 211.27a; MSA 7.27(1) and MCL 211.34d; MSA 7.52(4).

purpose of Proposal A (Const 1963, art 9, § 3) was to limit the annual increase in property assessments. This was certainly part of the voters' intent in approving the constitutional amendment. In the constitutional amendment, the word "additions" is coupled with the word "losses," and clearly pertains to the issue of taxation. "Addition" is defined as "the act or process of adding or uniting" and "something added." *Random House Webster's College Dictionary* (1992). As defined by the amended statutory subsection 34d(1)(b), "additions" includes omitted real and personal property not previously included in the assessment, new construction, previously exempt property, replacement construction, taxable value increases attributable to remediation of environmental contamination, and public services, as well as increases in value attributable to occupancy rates.

Because the constitutional amendment curbs the growth of property assessment, the Legislature's definition of "additions" in subsection 34d(1)(b), as amended, is reasonable and reflects the broad use and the plain meaning of the term "additions" in the language of the constitutional amendment, Const 1963, art 9, § 3. Increases in property assessments are thereby controlled until a transfer of the property occurs. Extension of the term "additions" to include increases in value attributable to increases in occupancy rate implements the intent of the voters for equal application to commercial property owners where those property owners were previously allowed a loss because of a decrease in occupancy rate or if the value of new construction was reduced because of a below-market occupancy rate.

Subsection 34d(1), as amended, is presumed to be constitutional, and the Legislature's enactment of that amendment carries out the purpose as expressed in the constitutional amendment, Const 1963, art 9, § 3. The trial court erred in finding subsection 34d(1), as amended, unconstitutional.

In light of our holding that subsection 34d(1) is not unconstitutional, review of plaintiff's issue regarding jurisdiction and the tax refund is unnecessary because defendant's assessment of plaintiff's property was proper.

We reverse the trial court's order declaring MCL 211.34d(1)(b); MSA 7.52(4)(1)(b) unconstitutional.