**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 14, 2002**

WPW ACQUISITION COMPANY,

    Plaintiff-Appellant,

v                                            No. 118750

CITY OF TROY,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

Underlying this case is the adoption of the "Proposal A" amendment of the Michigan Constitution at the special election held on March 15, 1994. In particular, Proposal A added language to Const 1963, art 9, § 3 that generally limits annual increases in property tax assessments on a parcel of property as long as that property is owned by the same party. However, Proposal A allows the value of property to be adjusted for "additions" without regard to this cap. At issue

is the constitutionality of a statutory provision, MCL 211.34d(1)(b)(vii), that purports to include, in certain circumstances, an increase in the value of property because of increased occupancy by tenants within the meaning of "additions." We conclude that this statutory provision is unconstitutional because it is inconsistent with the meaning of the term "additions" as used in Proposal A.

I

In 1991, before the ratification of Proposal A, plaintiff WPW Acquisition Company was granted by defendant city of Troy a decrease in the assessed value of the parcel of property that included the office building at issue. At all relevant times, this property has been owned by WPW.

In 1996, *after* the passage of Proposal A, Troy increased its determination of the assessed "taxable value" of the parcel of property, and thus its property tax assessment, by over thirteen percent.[1] Apparently, this increased assessment was tied to an increased occupancy of the office building by tenants. WPW protested this assessment as violative of the provision of the Proposal A constitutional amendment, codified at Const 1963, art 9, § 3, that generally limits annual increases in the assessed taxable value of a parcel of

---

[1] The taxable value assessed by Troy in 1995 was $6,545,970. In 1996, it was increased to $7,434,940.

property to the lesser of five percent or the increase in the "general price level" for the immediately preceding tax year. However, Troy took the position that the increased assessment was permitted by language in the constitutional amendment allowing adjustments for "additions" and a subsequently enacted statutory provision, MCL 211.34d(1)(b)(vii), which defines "additions" to include, in some circumstances, increases in the value of property attributable to an increased occupancy rate.

After the Michigan Tax Tribunal ruled in favor of Troy with regard to the assessment, WPW brought this action in the circuit court, challenging the constitutionality of the pertinent statutory provision, MCL 211.34d(1)(b)(vii). The circuit court held that this statutory provision was unconstitutional as an attempt by the Legislature to change the meaning of "additions" as used in the Michigan Constitution from the meaning established by the relevant statute when Proposal A was passed.[2] The Court of Appeals reversed, holding that the constitutional amendment left the meaning of "additions" to the Legislature "to define, consistent with the ratifiers' intent" and that the

_____

[2] However, the circuit court denied WPW's request that it order a corresponding tax refund in its favor on the ground that calculation and award of such a tax refund was within the exclusive jurisdiction of the Tax Tribunal.

3

Legislature had done so in a reasonable manner in the pertinent statutory provision. 243 Mich App 260; 620 NW2d 883 (2001). We granted WPW's application for leave to appeal.

II

The Michigan Constitution, Const 1963, art 9, § 3 provides in pertinent part with regard to taxation of real property:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. *For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property* adjusted for additions and losses, *shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred. When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value.* [Emphasis added.]

The emphasized language, which is central to the present case, was part of the language added to this constitutional provision by the Michigan electorate in ratifying Proposal A. As is plain, this language operates to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount

4

that the "taxable value" of the property may increase each year, even if the "true cash value," that is, the actual market value, of the property rises at a greater rate. However, a qualification is made to allow adjustments for "additions."  Resolution of the present case turns on the meaning of the term "additions" as used in the emphasized constitutional language.

When Proposal A was adopted (that is, on March 15, 1994), the General Property Tax Act defined "additions" to mean

> all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment role.  [MCL 211.34d(1)(a), as then in effect.]

Obviously, this definition did not encompass any increases in occupancy by tenants in a  building within the meaning of the term "additions."

However, *after* the pertinent constitutional language was added to § 3 by the ratification of Proposal A, the Legislature enacted amendments of MCL 211.34d(1)(b)(vii) that state in pertinent part:

> As used in this section or . . . section 3 . . . of article IX of the state constitution of 1963 [that is § 3 of the constitutional provision at issue]:
>
> * * *
>
> (b) For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all

5

of the following:

* * *

(vii) An increase in the value attributable to the property's occupancy rate if either a loss, as that term is defined in this section, had been previously allowed because of a decrease in the property's occupancy rate or if the value of new construction was reduced because of a below-market occupancy rate.

Troy relied on this statutory provision in increasing WPW's taxable value for the office building at issue by over thirteen percent in 1996 on the ground that this was based on an increase in occupancy covered by the statute and, thus, on an "addition" that was not subject to the general limit on annual property tax increases imposed by § 3.

However, we agree with WPW that MCL 211.34d(1)(b)(vii) is unconstitutional in purporting to define "additions" for purposes of § 3 in a way that is inconsistent with the established meaning of that term at the time that it was added to this constitutional provision by the passage of Proposal A. This is because "if a constitutional phrase is a technical legal term or a phrase of art in the law, the phrase will be given the meaning that those sophisticated in the law understood at the time of enactment unless it is clear from the constitutional language that some other meaning was intended." *Michigan Coalition of State Employee Unions v*

6

*Civil Service Comm,* 465 Mich 212, 223; 634 NW2d 692 (2001).[3] At the time that Proposal A was submitted to the voters, the General Property Tax Act established "additions" as a technical legal term in the area of property taxation. As we discussed above, that statutory definition of "additions" simply did not encompass any increase in the value of property due to increased occupancy by tenants.

Further, there is no indication when one examines the purposes of the property tax limitation amendment to conclude that another more expansive meaning of "additions" was intended.[4] On the contrary, the opposite appears to be the case. The amendment generally was to not allow the taxable value to increase above the "cap" regardless of any larger increase in true market value until the property was transferred. The blanket bar was tempered, however, by allowing for adjustments for additions. If what the amendment had done was empower the Legislature, at its will, to define an increase in the value of property (such as an increase due

---

[3] See also *People v Pickens,* 446 Mich 298, 310-311; 521 NW2d 797 (1994), quoting 1 Cooley, Constitutional Limitations (8th ed), p 132 ("technical words" and "words of art" in a constitution should be considered "to be employed in their technical sense").

[4] As we observed in *Federated Publications, Inc v Michigan State Univ Bd of Trustees,* 460 Mich 75, 85; 594 NW2d 491 (1999), "we often consider the circumstances surrounding the adoption of [a constitutional] provision and the purpose it is designed to accomplish."

7

to increased occupancy) to be classified as an "addition," then the property tax limiting thrust of § 3 would be, or could soon be if the Legislature desired it, thwarted. To adopt Troy's position regarding legislative power to amend the meaning of terms understood at the time of ratification, would be to assume the drafters and ratifiers of this amendment desired to place a convenient sabotaging clause within this tax limitation amendment that could be triggered whenever the Legislature chose. Such a skewed view of the intent, to say nothing of the capabilities, of the drafters and ratifiers, should be rejected. Moreover, to adopt such a mode of interpretation would, when applied in the future to other constitutional language, hollow out the people's ability to place limits on legislative power. In short, to recognize such an expansive legislative power to redefine constitutional terms is inconsistent with the constitution's supremacy over statutes. See *Marbury v Madison,* 5 US (1 Cranch) 137; 2 L Ed 60 (1803). Against this background, we see no principled way to determine the meaning of "additions" as used in § 3 except by considering it as a term of art that must be construed in conformity with the meaning of "additions" as used in the General Property Tax Act at the time that Proposal A was

8

adopted.[5]

Further, the position that Troy urges upon us, that the ultimate definition of "additions" in § 3 was committed to the Legislature,[6] also runs counter to the principle that construing the meaning of constitutional language is a basic judicial function. See *Lewis v Michigan,* 464 Mich 781, 788-789; 629 NW2d 868 (2001) (reviewing a statute for its constitutionality is "a core judicial function"); *House Speaker v Governor,* 443 Mich 560, 575; 506 NW2d 190 (1993), quoting *Baker v Carr,* 369 US 186, 211; 82 S Ct 691; 7 L Ed 2d (1962) (describing this Court as the "ultimate interpreter of the [Michigan] Constitution"). Moreover, the pivotal sentence in § 3 states:

---

[5] Troy emphasizes its view that WPW essentially got a tax break when the assessed value of the property was lowered in 1991 on the basis of a decrease in occupancy, and that the increase in value in 1996 was fair because it corresponded to an ensuing increase in occupancy. While WPW disputes this view with the contention that the decreased assessment in 1991 simply reflected a decline in market value, the point is simply immaterial to our analysis. Nothing in the language of § 3 and, in particular, nothing in the established meaning of "additions" at the time Proposal A was passed allows for an increase in the taxable value of property beyond the general cap established by Proposal A on the basis of such a prior reduction in assessed value.

[6] Troy states in its brief:

The Michigan Constitution, however, does not specifically define additions and losses, and therefore the legislature was left to format the commonly understood meaning of these terms into legislation.

9

> For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred.

This language clearly imposes an obligation on the Legislature to provide implementing legislation for a general limitation on the increase in taxable value of parcels of property. It cannot be distorted into allowing the Legislature to periodically alter the meaning of "additions." That such a limit on legislative power should be understood is underscored by the immediately following sentence in § 3, which provides:

> When ownership of the parcel of property is *transferred as defined by law*, the parcel shall be assessed at the applicable proportion of current true cash value. [Emphasis added.]

This language shows that the drafters of the proposal knew how to commit the definition of certain terms to the Legislature, in this instance, what constitutes a transfer. That no such legislative authority was granted with regard to the term "additions" reinforces the lack of such a commitment to allow the Legislature this power.

For these reasons, we disagree with the essential premise of the Court of Appeals in this case that § 3 "left it to the Legislature to define" the term "additions." Therefore, we hold that MCL 211.34d(1)(b)(vii) is unconstitutional because

10

it purports to define the term "additions" for purposes of § 3 in a way that violates the proper meaning of that term.[7]

It follows from our analysis that Troy's decision in 1996, in reliance on this unconstitutional statutory provision, to increase the assessment on the office building at issue by far more than five percent, solely on the basis of increased occupancy, facially violated the cap on annual increases in taxable value imposed by § 3. Thus, we reverse the holding of the Court of Appeals.

### III

In light of its holding rejecting WPW's constitutional challenge to MCL 211.34d(1)(b)(vii), the Court of Appeals expressly declined to reach the issue whether the circuit court had jurisdiction to order a tax refund premised on the unconstitutionality of that statutory provision. Accordingly, we remand this case to the Court of Appeals for initial consideration of that issue.[8]

---

[7] WPW also argues that this statutory provision violates the "uniformity" requirement of the first sentence of Const 1963, art 9, § 3, which states in pertinent part, "The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property . . . ." However, in light of our analysis holding MCL 211.34d(1)(b)(vii) to be unconstitutional on other grounds, it is unnecessary to consider that question.

[8] While the parties argue this matter here, we consider it most appropriate to allow the Court of Appeals to review it in the first instance.

The opinion of the Court of Appeals is reversed. This case is remanded to that Court for further proceedings consistent with this opinion.

CORRIGAN, C.J., and WEAVER, YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

WPW ACQUISITION COMPANY,

    Plaintiff-Appellant,

v                                         No. 118750

CITY OF TROY,

    Defendant-Appellee.

_____

CAVANAGH, J. (*concurring*).

The people of this state adopted Proposal A, which amended Const 1963, art 9, § 3 by limiting the tax increase that could be imposed on property tax assessments.  The amendment permits an increase in excess of this cap if the property valuation is adjusted for "additions."  I agree with the majority's conclusion that the Legislature impermissibly redefined "additions" in this instance.  However, I write separately to express my concern with the majority's overzealous condemnation of the Legislature's attempt to enact the provisions of the constitutional amendment and to caution against its constitutional analysis that suggests the undertaking lacks complexity.

I agree with the majority that the Legislature may define

constitutional terms when permitted by the text.  Because the revised definition significantly expands the articulated exceptions to the cap on tax increases, it conflicts with the original intent of the ratifiers.  This legislative overreaching is particularly evident because we are close in time to the passage of the amendment, and we must assume the ratifiers intended any exceptions to the cap on tax increases be narrowly construed.  However, contrary to what the majority implies, even if this Court determined that the text of the amendment expressly *permits* the Legislature to define the term, its design could *not* be thwarted because this Court would still be required to invalidate any definition that violated the purpose of the amendment.  The Legislature can never *unconstitutionally* define a term in the constitution.

Though the issues this case presents are far from complex, the nature of constitutional interpretation is rarely so straightforward.  Simply stated, the value of original intent as one method among many in the endeavor to properly interpret our constitution must be appreciated.  With that qualification, I respectfully concur.

KELLY, J., concurred with CAVANAGH, J.