Weaver, J.
(concurring in part and dissenting in part). I concur in the result only of the majority. I write separately to express my disagreement with the majority’s construction of the constitutional concept, “just compensation.”[1] The majority suggests that “just
*383 compensation” is a “technical legal term or phrase of art” that cannot be grasped by those not “sophisticated in the law.” Ante at 375. This incorrect suggestion leads the majority to conclude that the meaning of “just compensation” must be restricted to the “consensus understanding in 1963, by those skilled in this area of the law, of the meaning of ‘just compensation.’ ” Ante at 376.
While it may be that the understanding of “just compensation” of those sophisticated in the law of condemnation in 1963 may not differ significantly from that of the common person, either past or present, this Court should not engage in a method of constitutional construction that unnecessarily sidesteps the long-established primary rule of constitutional construction. The primary rule[2] of constitutional construction is that constitutional language is to be interpreted according to “common understanding” as described by Justice Cooley:
“A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. ‘. . . the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *384 but rather that they have accepted them in the sense most obvious to the common understanding . . . ” [Traverse City School Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971).]
The Supreme Court has reiterated this primary rule of constitutional construction: “Each provision of a State Constitution is the direct word of the people of the State, not that of the scriveners thereof.” Lockwood v Comm’r of Revenue, 357 Mich 517, 565; 98 NW2d 753 (1959). Thus, when attempting to interpret a constitutional provision, “ ‘the primary source for ascertaining its meaning is to examine its plain meaning as understood by its ratifiers at the time of its adoption.’ ” People v Bulger, 462 Mich 495, 507; 614 NW2d 103 (2000), quoting Charles Reinhart Co v Winiemko, 444 Mich 579, 606; 513 NW2d 713 (1994).
Thus, the issue in this case is whether the term “just compensation” can be said to possess a “plain meaning.” Contrary to the majority’s suggestion, the meaning of “just compensation” is neither difficult to discern nor does it require “sophistication in the law” to be grasped. Ante at 375, generally.[3]
“Just compensation” has long been readily and reasonably understood to be that amount of money that puts the property owner whose property is taken in as good, but not better, a financial position after the
*385 taking as the property owner enjoyed before the taking.[4] The measure of “just compensation” is “the property owner’s loss rather than the government’s gain.”[5] Though determining the dollar figure that most accurately describes the property owner’s loss can be a complicated task, such complication does not render “just compensation” a “technical legal term or phrase of art.” Indeed, though complicated, that task was expressly dedicated by the 1850 and 1908 constitutions of Michigan to a jury of “twelve freeholders, residing in the vicinity of such property, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law . . . .” Const 1850, art 18, § 2; Const 1908, art 13, § 2. Further, this Court has said of condemnation proceedings, “the jury is the judge of law and fact. Its conclusions need not be based entirely on the testimony but it may use its own judgment and knowledge from a view of the premises and its experience as freeholders.” Dep’t of Conservation v Connor, 316 Mich 565, 593; 25 NW2d 619 (1947).[6] While the task of quantifying just compensation can be a complicated task, in light of this *386 history, it cannot seriously be suggested that the concept of “just compensation” is anything but obvious on its face.
In addition, I write to express concern with the majority’s adoption of a one-size-fits-all rule in the context of just compensation. The majority asserts that contamination costs must be considered in just-compensation determinations or the court would “place the legislators in the posture of acting unconstitutionally.” Ante at 379.[7] This conclusion is certainly debatable. The statute at issue provides:
Before initiating negotiations for the purchase of property, the agency shall establish an amount that it believes to be just compensation for the property and shall submit to the owner a good faith written offer to acquire the property for the full amount so established. . . . The good faith offer shall state whether the agency reserves or waives its rights to bring federal or state cost recovery actions against the present owner of the property arising out of a release of hazardous substances at the property and the agency’s appraisal of just compensation for the property shall reflect such reservation or waiver. The amount shall not be less than the agency’s appraisal of just compensation for the property. . . . [MCL 213.55(1).]
The statute’s express consideration of what compensation is just under the constitution does not necessarily mean that the Legislature intended, or was constitutionally obligated to require, that a good-faith offer *387 be reduced by the cost of remediation in order to constitute “just compensation.” Though market value typically serves as a measure of just compensation, it is not the sole criterion. As recognized by the United States Supreme Court, where the market value is “too difficult to find” or the “payment of market value would result in ‘manifest injustice’ to the owner or the public,” the market value should not be the measure of just compensation. Kirby Forest Industries, Inc v United States, 467 US 1, 10; 104 S Ct 2187; 81 L Ed 2d 1 (1984).
Because the effect of contamination on the value of a property is difficult to determine and is susceptible to different remediation and calculation approaches, it is perhaps more appropriate to leave this fact-laden and case-specific determination to the judge or jury rather than the majority’s one-size-fits-all formula or artificial rule. A determination by a judge or jury is consistent with this Court’s prior holdings that just-compensation awards in condemnation proceedings should be decided on a case by case basis. “[T]he determination of value in condemnation proceedings is not a matter of formula or artificial rules but of sound judgment and discretion based upon a consideration of all relevant facts in a particular case.” In re Grand Haven Hwy, 357 Mich 20, 28-29; 97 NW2d 748 (1959), citing In re Widening of Gratiot Avenue, 294 Mich 569; 293 NW 755 (1940).

 Article 10, § 2 of the Michigan Constitution provides:
Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner *383 prescribed by law. Compensation shall be determined in proceedings in a court of record.
This case was brought under the Uniform Condemnation Procedures Act, MCL 213.51 et seq., which prescribes the manner in which just compensation is “first made or secured” pursuant to Const 1963, art 10, § 2.

 If the plain meaning is unascertainable, secondarily, “the circumstances surrounding the adoption of the constitutional provision and the purpose sought to be accomplished may be considered .... Finally, whenever possible, an interpretation that does not create constitutional invalidity is preferred to one that does.” State Highway Comm v Vanderkloot, 392 Mich 159, 179; 220 NW2d 416 (1974) (opinion by Williams, J.)

 In certain circumstances, it is appropriate and necessary to consider the meaning of constitutional terms that are established in the law. See, e.g., Michigan United Conservation Clubs v Secretary of State (After Remand), 464 Mich 359, 414-420; 630 NW2d 297 (2001) (Weaver, J., dissenting) (construing “acts making appropriations” in art 2, § 9 of the Michigan Constitution), and WPW Acquisition Co v City of Troy, 466 Mich 117, 123; 643 NW2d 564 (2002) (holding unconstitutional the Legislature’s definition of a statutory term that conflicted “with the established meaning of the term at the time that it was” adopted by constitutional amendment).

 Wayne Co v Britton Trust, 454 Mich 608, 622; 563 NW2d 608 (1997); In re Edward J Jefferies Homes Housing Project, 306 Mich 638, 650; 11 NW2d 272 (1943); In re Widening of Bagley Ave, 248 Mich 1, 5; 226 NW 688 (1929).

 Brown v Legal Foundation of Washington, 538 US 216,_; 123 S Ct 1406, 1419; 155 L Ed 2d 376 (2003), in which the United States Supreme Court reiterated that “[t]his conclusion is supported by consistent and unambiguous holdings in our cases.” See also Boston Chamber of Commerce v Boston, 217 US 189, 195; 30 S Ct 459; 54 L Ed 725 (1910).

 Under the current constitutional and statutory framework, a just-compensation award is determined by a jury or the court. Const 1963, art 10, § 2 provides in pertinent part that “[cjompensation shall be determined in proceedings in a court of record.” MCL 213.63 provides in pertinent part, “[t]he jury or the court shall award in its verdict just compensation for each parcel.”

 The majority notes that “the primary connection between a condemnation proceeding and a cost-recovery action is the escrow that may be created during the condemnation proceeding to provide security for the payment of the potential cost-recovery award.” Ante at 381. However, the existence of the escrow mechanism does not answer whether the Legislature intended that the cost of remediation should be considered in condemnation proceedings.