*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KNIER, POWERS, MARTIN, & SMITH, LLC,

        Petitioner-Appellant,

v

CITY OF BAY CITY,

        Respondent-Appellee.

FOR PUBLICATION
August 8, 2024
9:00 a.m.

No. 366114
Tax Tribunal
LC No. 22-001900-TT

Before: MALDONADO, P.J., and K. F. KELLY and REDFORD, JJ.

REDFORD, J.

Petitioner-appellant, Knier, Powers, Martin, & Smith, LLC (KPMS), appeals as of right an order of the Michigan Tax Tribunal (the Tribunal) denying KPMS summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and granting respondent-appellee, City of Bay City (Bay City) summary disposition under MCR 2.116(I)(2) (summary disposition for party opposing the motion). The Tribunal held that the taxable value of KPMS's property increased beyond the cap in MCL 211.271(2) because the installation of a new roof on a commercial building was "new construction," and, therefore, an "addition" as defined by MCL 211.34d(1)(b)(*iii*) and Const 1963, art 9, § 3. Because we agree that the new roof for this commercial building was "new construction," we affirm.

## I. FACTUAL BACKGROUND

The general facts are not disputed. KPMS owns real property consisting of an office building in Bay City, Michigan. In 2021, KPMS hired a contractor to replace the roof on the building. The roof replacement consisted of the installation of new shingles, a "60 MIL-EPDM" membrane, and plywood to replace the underlying plywood. The cost of the project was $70,053.

Bay City sent KPMS notice that it assessed an increase in the taxable value of the property for tax year 2022 after the installation of the new roof. In 2021, the property had a taxable value of $161,262. In 2022, Bay City assessed the property at the taxable value of $181,283, which was a $20,021 and 12.4152% increase in taxable value from 2021. The fair market value of the property increased from $382,400 in 2021 to $444,600 in 2022. Although increases in taxable value are generally limited to a "cap," the lesser of 5% or the inflation rate, during the course of a

-1-

property owner's ownership, Bay City determined that additional taxation was permitted because the increased value arose from an "addition." MCL 211.27a(2)(a).

KPMS contested the assessment of the property's 2022 true cash and taxable values with the Bay City Board of Review, which affirmed the assessment. KPMS appealed the Board of Review's decision to the Michigan Tax Tribunal. In the Tribunal, KPMS asserted that Bay City increased the taxable value of the property beyond the cap in contravention Const 1963, art 9, § 3 and MCL 211.27a(2)(a). Additionally, KPMS asserted that Bay City overstated the cash value of the property. Bay City answered the complaint, denying that KPMS was entitled to relief because it properly and lawfully reassessed the property's taxable value.

In an amended motion for summary disposition under MCR 2.116(C)(10), KPMS asserted that Bay City erroneously assessed the property in contravention of Const 1963, art 9, § 3 and MCL 211.27a(2)(a) because the assessment exceeded the cap in both provisions. KPMS argued that Bay City could not exceed the "cap" because the roof replacement was not an "addition" as defined by MCL 211.34d or the Michigan Constitution. In support of its argument, KPMS asserted that reference to the dictionary definition of "additions" was necessary because the Michigan Constitution did not define the term. In response, Bay City requested that the Tribunal grant it summary disposition under MCR 2.116(I)(2), arguing that the cap in the Constitution and state law did not apply because the new roof was an "addition" within the meaning of MCL 211.27a(2)(a) and MCL 211.34d(1)(b)(*iii*) because it was "new construction." Bay City did not respond to KPMS's constitutional argument.

Without oral arguments, the Tribunal issued a proposed order denying KPMS's motion for summary disposition and granted Bay City partial summary disposition. The Tribunal declined to apply a dictionary definition of the term "additions" because the term was defined by statute. The Tribunal explained that the roof replacement was "new construction" as defined by MCL 211.34d(1)(b)(*iii*) because the new roof was property not in existence on the immediately preceding tax day and not "replacement construction," as narrowly defined by MCL 211.34d(1)(b)(*v*). The order did not address KPMS's constitutional arguments.

KPMS filed exceptions to the proposed order. Relevant to the issues on appeal, KPMS asserted that the Tribunal ignored its constitutional argument and that reference to a dictionary definition was necessary for interpretation of the term "additions" in Const 1963, art 9, § 3 because the Legislature could not define the term as used in the Michigan Constitution. Bay City responded to the exceptions, asserting that it agreed with the Tribunal's holding and that KPMS failed to demonstrate error in the Tribunal's analysis. The Tribunal issued an opinion rejecting KPMS's exceptions and adopting the reasoning from the proposed order. The order was labeled a "Partial Final Opinion and Judgment." However, the order did not dismiss the case because further proceedings in the Tribunal were necessary to address the true cash value of the roof replacement. This appeal followed.

## II. APPELLATE JURISDICTION

As a preliminary matter, Bay City argues that the April 24, 2023 order denying KPMS summary disposition and granting it summary disposition was not appealable as of right because the order was not a final order under MCR 7.203(A)(1). We agree that the order is not a final

order appealable as of right, but note that MCL 205.753 rather than MCR 7.203(A)(1) guides our analysis. Regardless, we exercise our discretion and treat the appeal as leave granted.

Whether we have jurisdiction to hear an appeal is an issue we review de novo. *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 132-133; 624 NW2d 197 (2000). Likewise, the construction and application of a court rule is a legal issue we review de novo. *Id*. MCR 7.203(A)(1) only applies to appeals from a circuit court or the Court of Claims. MCR 7.203(A)(1) (providing that a "final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6)" is appealable as of right). For cases originating in the Tribunal, MCL 205.753(2) provides that an "[a]ppeal from the final order or decision of the tribunal may be taken by filing an appeal in accordance with the Michigan court rules after the entry of the order or decision appealed from or after denial of a motion for rehearing timely filed." Under MCL 205.753(3), "An order, ruling, or decision before the final decision of the tribunal is not reviewable unless leave to appeal is granted by the court of appeals."

A final order is the first order that "disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." MCL 7.202(6)(a)(*i*). KPMS appeals as of right the April order denying it summary disposition and granting Bay City partial summary disposition. Labeled a "Partial Final Opinion and Judgment," the April order explained that further proceedings in the Tribunal were necessary to address the true cash value of the roof replacement. Despite indicating that further proceedings were necessary, the order included language expressly stating that a party that disagreed "with the final decision in this case" may file a claim of appeal in this Court. After this order was issued, the parties participated in a telephone status conference in which they advised the Tribunal that KPMS would no longer contest the true cash value of the roof replacement. The Tribunal entered an order on July 3, 2023, adopting the April 24, 2023 order as a final order and dismissed the case. KPMS alleged that it did not receive notice of the July order and did not file an appeal of that order within 21 days. See MCR 7.204(A)(1).

Although the Tribunal designated the April order a "partial final order," the order is not final because it did not dispose of all claims in the case. See MCR 7.202(6)(a)(*i*). Instead, it left open the issue of the true value of the roof replacement for future proceedings. The July order adopting the April order as the final order was the order that disposed of the case. Accordingly, KPMS was not entitled to an appeal as of right from the April order and missed its opportunity to file an appeal as of right from the July order. See MCR 7.204(A)(1). However, this Court may exercise its discretion to treat the appeal as leave granted. *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012). In the interest of judicial economy, we exercise our discretion and treat the appeal as leave granted.

### III. DISCUSSION

### A. STANDARD OF REVIEW

In the absence of fraud, we review the Tribunal's decision for misapplication of the law or adoption of a wrong principle. *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994); see also Const 1963, art 6, § 28. The proper interpretation and application of a statute is a question of law we review de novo. *Anderson v Myers*, 268 Mich App 713, 714; 709 NW2d 171 (2005). We review questions of constitutional construction de novo. *Hunter v Hunter*,

484 Mich 247, 257; 771 NW2d 694 (2009). Likewise, we review a Tribunal's decision to grant or deny a motion for summary disposition de novo. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010).

## B. "ADDITIONS" UNDER MCL 211.34d(1)(b)

KPMS contends that the trial court erred when it held that the new roof was an "addition" for purposes of MCL 211.27a because it was "new construction" as defined by MCL 211.34d(1)(b)(*iii*). In support of this argument, KPMS argues that the roof was not "new construction" because the building had a roof both before and after the roof replacement. Bay City contends that the trial court correctly held that the new roof was "new construction" under the plain language of the statute because the new, more valuable roof was not in existence on the immediately preceding tax day. We agree with Bay City.

The overall goal of statutory interpretation is to give effect to the intent of the Legislature. *Dep't of Environmental Qual v Worth Twp*, 491 Mich 227, 237; 814 NW2d 646 (2012). To effectuate this goal, we "seek to discern the ordinary meaning of the language in the context of the statute as a whole." *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 344; 952 NW2d 384 (2020) (*TOMRA*). Such language must be enforced as written, "giving effect to every word, phrase, and clause." *Perkovic v Zurich Ins Co*, 500 Mich 44, 49; 893 NW2d 322 (2017).

Under the General Property Tax Act (GPTA), "all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1. The taxable value of property for a given year is calculated, in relevant part, as follows:

> (2) Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
>
> (a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, *plus all additions*. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.
>
> (b) The property's current state equalized valuation. [MCL 211.27a(2) (emphasis added).]

MCL 211.27a(11)(a) provides that the term "additions" is defined in § 34d. As relevant to this appeal, "additions" is defined as follows:

> (b) For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all of the following:
>
> * * *
>
> (*iii*) New construction. As used in this subparagraph, "new construction" means property not in existence on the immediately preceding tax day and not replacement construction. New construction includes the physical addition of

equipment or furnishings, subject to the provisions set forth in section 27(2)(a) to (q). For purposes of determining the taxable value of property under section 27a, the value of new construction is the true cash value of the new construction multiplied by 0.50.

\* \* \*

(*v*) Replacement construction. As used in this subparagraph, "replacement construction" means construction that replaced property damaged or destroyed by accident or act of God and that occurred after the immediately preceding tax day to the extent the construction's true cash value does not exceed the true cash value of property that was damaged or destroyed by accident or act of God in the immediately preceding 3 years. [MCL 211.34d(1)(b)(*iii*), (*v*).]

The Tribunal and parties all agree that the roof was not "replacement construction" as defined by MCL 211.34d(1)(b)(*iii*) because the roof was not replaced as a result of an accident or act of God. This leaves the question of whether the roof was "property not in existence on the immediately preceding tax day." MCL 211.34d(1)(b)(*iii*). The answer is, the new roof falls within this statutory language.

KPMS first argues that "property" as used in this statute only refers to "real property," which KPMS narrowly defines as the land and the building which sits upon that land. Consequently, KPMS argues that a roof is not "property" for purposes of the statute. This narrow interpretation of the term "property" reads additional language into the statute that does not comport with the statutory text.

First, KPMS's proposed definition of "real property" as only the land and the building which sits upon that land conflicts with the definition of "real property" provided in the statutory scheme. Under the GPTA, real property includes "[a]ll land within this state, all buildings and fixtures on the land, and all appurtenances to the land, except as expressly exempted by law." MCL 211.2(1)(a). Clearly, this definition encompasses more than land and buildings that sit upon that land alone.

Second, review of the statutory scheme shows that the Legislature intended to include both real and personal property in the term "property" as used in MCL 211.34d(1)(b)(*iii*). Throughout the GPTA, the Legislature specifically refers to "real property" or "personal property" when it intends to single out those two categories of property and more generally refers to "property" when it intends to incorporate both types of property. Review of MCL 211.34d alone unquestionably demonstrates this intent. In the two subparagraphs preceding MCL 211.34d(1)(b)(*iii*), the Legislature further defines "additions" as "omitted real property," MCL 211.34d(1)(b)(*i*), and "omitted personal property," MCL 211.34d(1)(b)(*ii*). Read in context of the whole statute, it is clear that the Legislature did not only intend to refer to real property when it used the more general term "property" in MCL 211.34d(1)(b)(*iii*), just one subparagraph after MCL 211.34d(1)(b)(*i*) and MCL 211.34d(1)(b)(*ii*). See *TOMRA*, 505 Mich at 344. Accordingly, the Legislature's use of the more general term "property" in MCL 211.34d(1)(b)(*iii*) contemplates both personal and real property in the definition of "new construction." KPMS's argument that a roof was not

-5-

contemplated within the statutory term "property" because it is not land or a building is without merit. The new roof was "property" as contemplated by the statute.

Next, KPMS argues that the roof replacement was not new construction because a roof existed on the property both before and after the roof replacement project. In support of its argument, KPMS argues that under the Tribunal's definition, every repair or replacement of worn materials, such as carpets or light fixtures, would be a basis for increasing a property's taxable value. Bay City argues that the Legislature intended to broadly define "new construction" for purposes of taxation to include maintenance, replacements, and repairs that would result in an increase in a property's taxable value beyond any "capped" taxable value increase. We agree with Bay City.

Review of the plain language of MCL 211.34d(1)(b)(*iii*) and its surrounding statutory text shows that "new construction" includes the new, more valuable roof that replaced an old roof. A comparison of the two categories of "construction"—new and replacement—in its definition of "additions" indicates the Legislature's intent to broadly define "new construction." As previously noted, the new roof is not "replacement construction" for purposes of the statute. "Replacement construction" is narrowly defined as "construction that replaced property damaged or destroyed by accident or act of God . . . ." MCL 211.34d(1)(b)(*v*). The Legislature included a carveout in "replacement construction" for construction completed within three years of the accident or act of God that is "substantially the same materials." Such construction is "equal to the taxable value of the property in the year immediately preceding the year in which the property was damaged or destroyed . . . ." MCL 211.34d(1)(b)(*v*).

"New construction" expressly excludes the narrowly defined "replacement construction" from its definition. If the Legislature wanted to exclude more typical repair, replacement, and maintenance from its definition of "new construction," it would have carved out more than "construction that replaced property damaged or destroyed by accident or act of God." Likewise, MCL 211.34d(1)(b)(*iii*) does not include the same carveout for new construction made of substantially the same materials found in "replacement construction." The inclusion of this language in MCL 211.34d(1)(b)(*v*) but not MCL 211.34d(1)(b)(*iii*) supports that the Legislature intended to include replacements, like the new roof, in "new construction." With the exclusion of "replacement construction," the statute widely defines "new construction" as "property not in existence on the immediately preceding tax day." The roof meets this definition. It was an entirely new roof that was not in existence on the immediately preceding tax day.

KPMS further argues that this interpretation of "new construction" would too widely include every minor repair, such as new carpets or lighting fixtures. This argument is without merit. First, this argument ignores that in order for an addition to be included in an assessment, it must affect the property's taxable value. MCL 211.34d(1)(b)(*iii*) explains that "the value of new construction is the true cash value of the new construction multiplied by 0.50." MCL 211.34d(1)(b)(*iii*). True cash value is synonymous with fair market value. *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 484 n 17; 473 NW2d 636 (1991). Plainly, this statute is aimed at additions that enhance the value of the property. Many minor repairs do not meet this condition. Accordingly, value added by new construction only includes additions that actually increase the selling price of the property.

Second, this argument ignores that the Legislature enacted a specific carveout for such repairs in residential property. MCL 211.34d(1)(b)(*iii*) includes within its definition of "new construction" "the physical addition of equipment or furnishings, subject to the provisions set forth in section 27(2)(a) to (q)." MCL 211.27(2) provides in relevant part:

> The assessor shall not consider the increase in true cash value that is a result of expenditures *for normal repairs, replacement, and maintenance* in determining the true cash value of property for assessment purposes until the property is sold. For the purpose of implementing this subsection, the assessor shall not increase the construction quality classification or reduce the effective age for depreciation purposes, except if the appraisal of the property was erroneous before nonconsideration of the normal repair, replacement, or maintenance, and shall not assign an economic condition factor to the property that differs from the economic condition factor assigned to similar properties as defined by appraisal procedures applied in the jurisdiction. The increase in value attributable to the items included in subdivisions (a) to (q) that is known to the assessor and excluded from true cash value must be indicated on the assessment roll. *This subsection applies only to residential property.* The following repairs are considered normal maintenance if they are not part of a structural addition or completion:
>
> * * *
>
> (b) Repairing or replacing siding, roof, porches, steps, sidewalks, or drives. [MCL 211.27(2)(b) (emphasis added).]

As indicated by this statute, the taxable value of residential property will not be increased by the assessor for "the increase in true cash value that is a result of expenditures for normal repairs, replacement, and maintenance." MCL 211.27(2). MCL 211.27(2)(b) expressly cites roof replacements on residential property as normal repairs, replacements, and maintenance. This carveout, directly cross-referenced in MCL 211.34d(1)(b)(*iii*), further supports that the new roof on KPMS's commercial building is "new construction." If normal repairs, replacement, and maintenance on nonresidential property were not "new construction" for purposes of MCL 211.34d(1)(b)(*iii*), MCL 211.27(2) would be rendered a nullity. See *Perkovic*, 500 Mich at 49.

KPMS finally argues that citation to MCL 211.27(2) does not support the inclusion of ordinary repairs in the definition of "new construction" because that statute only addresses the true cash value and not the taxable value of property. This argument is without merit. MCL 211.34d(1)(b)(*iii*) expressly states that "[f]or purposes of determining the taxable value of property under section 27a, the value of new construction is the true cash value of the new construction multiplied by 0.50." Therefore, MCL 211.27(2)'s reference to the "true cash value" without express reference to the taxable value does not render MCL 211.27(2) irrelevant to MCL 211.34d(1)(b)(*iii*).

For these reasons, KPMS's interpretation of "new construction" is contrary to the plain language of the statute. KPMS added a new roof on commercial property. The new roof was property not in existence on the immediately preceding tax day. Consequently, the Tribunal did

not err when it held that KPMS's new roof was an "addition" because it was "new construction" under MCL 211.34d(1)(b)(*iii*).

## C. "ADDITIONS" UNDER THE MICHIGAN CONSTITUTION

KPMS next argues that the Tribunal erred by failing to consider its constitutional argument that the roof replacement did not fall within the meaning of "additions" in Const 1963, art 9, § 3. KPMS argues that "additions" is not defined for purposes of the constitutional provision and that this Court should adopt the dictionary definition of the term. Bay City argues that consideration of a constitutional issue was not within the Tribunal's jurisdiction and, even if it was, "additions" as used in the Michigan Constitution has a technical legal definition. Bay City argues that KPMS's new roof fits within that definition. We agree that the Tribunal could have considered KPMS's constitutional argument. However, we conclude that the new roof fell within the definition of "additions" in Const 1963, art 9, § 3.

We first address the Tribunal's jurisdiction to consider this issue. The Tribunal does not have "jurisdiction over constitutional questions and does not possess authority to hold statutes invalid." *Meadowbrook Village Assoc v Auburn Hills*, 226 Mich App 594, 596; 574 NW2d 924 (1997). Instead, constitutional questions and the authority to hold statutes invalid are within the jurisdiction of the circuit court. *Id*. at 596-597. Tax Tribunals may, however, "consider claims that an assessment is arbitrary or without foundation even if couched in constitutional terms." *Id*. at 597. Although couched in constitutional terms, KPMS's claim in the Tribunal did not involve the validity of a statute. Instead, KPMS asked whether Bay City's assessment was founded within the meaning of "additions" in Const 1963, art 9, § 3. Accordingly, the Tribunal could have addressed KPMS's constitutional question. Nevertheless, there is no merit in KPMS's substantive argument.

"When interpreting constitutional provisions, our primary objective is to realize the intent of the people by whom and for whom the constitution was ratified." *Toll Northville LTD v Twp of Northville*, 480 Mich 6, 11; 743 NW2d 902 (2008) (quotation marks and citation omitted). Toward this purpose, "we apply the plain meaning of terms used in the constitution unless technical legal terms were employed." *Id*. "[I]f a constitutional phrase is a technical legal term or a phrase of art in the law, the phrase will be given the meaning that those sophisticated in the law understood at the time of enactment unless it is clear from the constitutional language that some other meaning was intended." *WPW Acquisition Co v City of Troy*, 466 Mich 117, 123; 643 NW2d 564 (2002) (quotation marks and citation omitted).

Const 1963, art 9, § 3, as amended by Proposal A, states, in relevant part, as follows:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. *For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each*

*year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred.* [Emphasis added.]

The emphasized language was part of the text added to this constitutional provision by the ratification of Proposal A in 1994. *WPW Acquisition Co*, 466 Mich at 119. As described by our Supreme Court:

> This language operates to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the "taxable value" of the property may increase each year, even if the "true cash value," that is, the actual market value, of the property rises at a greater rate. However, a qualification is made to allow adjustments for "additions." [*Id*. at 121-122.]

KPMS's argument that citation to a lay dictionary is necessary to define "additions" is foreclosed by our Supreme Court's decision in *WPW Acquisition Co*. The Court explained that when Proposal A was ratified, "additions" was a technical legal term with a particularized meaning. *Id*. at 123. At that time, the GPTA defined "additions" as "all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment role." *Id*. at 122, citing MCL 211.34d(1)(a), as amended by 1993 PA 145. Because "additions" already has a particular legal meaning, we decline to consider whether the new roof meets a lay definition of the term "additions." Notably, the current definition of "new construction" tracks the language in the technical definition of "additions" at the time Proposal A was adopted. Accordingly, the roof is "new construction" such that it meets the technical definition of "additions" in Const 1963, art 9, § 3.

As a corollary to KPMS's constitutional argument, KPMS argues that MCL 211.34d(1)(b)(*iii*) conflicts with Const 1963, art 9, § 3 to the extent that it contemplates a new roof within the constitutional meaning of "additions." KPMS argues that this definition impermissibly expanded the meaning of "additions." This argument is without merit because the current definition of "new construction" tracks the definition of "additions" at the time Proposal A was adopted.

The Legislature is not empowered to define "additions" more expansively than its meaning at the time Proposal A was ratified. *WPW Acquisition Co*, 466 Mich at 124. This principle was explained by our Supreme Court when it considered the constitutionality of former MCL 211.34d(1)(b)(*vii*), which included an increase in the value of property because of increased occupancy by tenants in its definition of "additions." *Id*. at 119. The Court held that the statutory provision was unconstitutional because it was inconsistent with the meaning of the term "additions" when Proposal A was adopted. *Id*. As previously explained, "additions" is a technical legal term that, at the time Proposal A was passed, meant: "all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment role." *Id*. at 122, citing MCL 211.34d(1)(a), as amended by 1993 PA 145. Plain from

this definition, the Court explained that the language did not include any increases in occupancy by tenants in a building. *WPW Acquisition Co*, 466 Mich at 122.

MCL 211.34d(1)(b)(*iii*) is unlike the former MCL 211.34d(1)(b)(*vii*). It does not expand the definition of "additions." Instead, as previously noted, "new construction" as defined by MCL 211.34d(1)(b)(*iii*) tracks the pre-Proposal A definition of "additions." It incorporates the same language. Accordingly, the statutory definition of "new construction" does not impermissibly expand the definition of "additions" in contravention of Const 1963, art 9, § 3.

## IV. CONCLUSION

Because the new roof was "new construction," it was an "addition" as defined by MCL 211.34d(1)(b)(*iii*) and Const 1963, art 9, § 3. The Tribunal did not err in granting Bay City summary disposition on the basis that Bay City correctly assessed the property's taxable value beyond the cap in MCL 211.27a(2)(a) and Const 1963, art 9, § 3. For these reasons, KPMS is not entitled to relief.

Affirmed.

/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado
/s/ Kirsten Frank Kelly