TOLL NORTHVILLE, LTD v NORTHVILLE TOWNSHIP

Docket No. 259021. Submitted September 12, 2006, at Detroit. Decided
October 3, 2006, at 9:10 a.m. Leave to appeal sought.

Toll Northville, Ltd.; and Biltmore Wineman, LLC, developers who
owned a parcel of land in Northville Township, installed roads,
sidewalks, streetlights, and utility services on the land. As a result of
these installations, Northville Township increased the taxable value
of the land. The developers appealed the assessments to the Michigan
Tax Tribunal, arguing that the statutory provision that allowed for
increasing the taxable value of property because of additions, includ-
ing public service installations, MCL 211.34d(1)(b)(*viii*), was uncon-
stitutional under Proposal A, a 1994 amendment of the Michigan
Constitution that limited annual increases in the assessed taxable
value of property. Because the Tax Tribunal did not have jurisdiction
to decide this issue, the hearing was held in abeyance pending the
outcome of a declaratory judgment action that Toll Northville
brought against the township in the Wayne Circuit Court to deter-
mine the constitutionality of MCL 211.34d(1)(b)(*viii*). The township
successfully moved for the compulsory joinder of Biltmore Wineman.
The developers moved for summary disposition on the ground that
MCL 211.34d(1)(b)(*viii*) was unconstitutional, and the township
moved for summary disposition on the ground that the term "addi-
tions" included the installation of public services before Proposal A
was enacted. The trial court, John A. Murphy, J., granted summary
disposition to the developers and denied it to the township, conclud-
ing that public service improvements cannot be included in valuing
property for tax assessment purposes. The township appealed.

The Court of Appeals *held*:

1. The township's argument that there is no actual contro-
versy to resolve because the Tax Tribunal has no authority or
jurisdiction to grant relief is without merit in light of the fact that
the township is appealing a decision of the circuit court, not the
Tax Tribunal.

2. The statutory inclusion of the installation of public service
improvements within the definition of "additions" contained in
the General Property Tax Act, MCL 211.1 *et seq.*, is inconsistent
with the definition of "additions" before the passage of Proposal A,

because public service improvements do not fall within the scope of "new construction" or "a physical addition of equipment or furnishings" as those terms were understood before Proposal A was passed. Therefore, the statutory provision allowing the taxable value of property to increase because of the installation of public service improvements is unconstitutional.

3. Although a development company owns the land on which public service improvements are installed, because title to these improvements is ultimately held by the municipality or a utility company, these improvements should not be included in the taxable value of the property. To the extent that the public service improvements increase the true cash value of the land, the tax revenue for that increased value will be realized when the lots are transferred to private owners.

Affirmed.

TAXATION — REAL PROPERTY — TAXABLE VALUE — ADDITIONS — PUBLIC SERVICE IMPROVEMENTS.

The expansion of the definition of "additions" contained in the General Property Tax Act to include the installation of public service improvements is unconstitutional because public service improvements do not fall within the scope of "new construction" or "a physical addition of equipment or furnishings" as those terms were understood before the passage of Proposal A, which limited annual increases in the taxable value of property (Const 1963, art 9, § 3; MCL 211.34d[1][b][*viii*]).

*Hoffert & Associates, P.C.* (by *David B. Marmon* and *Myles B. Hoffert*), for the plaintiffs.

*Rose & Abramson, P.C.* (by *Nevin A. Rose*), for the defendant.

Amici Curiae:

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *James W. Porter*), for Michigan Townships Association and Michigan Municipal League.

*Mary Rose Macmillan*, Deputy Assistant Corporation Counsel, and *Onnie B. Jacque*, Assistant Corporation Counsel, for Wayne County.

Before: WHITBECK, C.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

### I. OVERVIEW

Defendant Northville Township appeals as of right the trial court's order denying the township summary disposition under MCR 2.116(C)(8) and granting plaintiffs Toll Northville, Ltd; and Biltmore Wineman, LLC, summary disposition under MCR 2.116(C)(10). We affirm. This case arises out of a dispute regarding the taxable value of public service improvements made to 537 residential parcels of real property located in Northville Township.

In a special election held on March 15, 1994, Michigan electors voted in support of "Proposal A" to amend the Michigan Constitution. The constitutional amendment became effective on April 30, 1994. In pertinent part, Proposal A added language to Const 1963, art 9, § 3 to generally limit annual increases in the assessed taxable value on a parcel of property to the lesser of five percent or the increase in the general price level. The limit only applies, however, as long as the same party owns the property. And, even if the property is not transferred, Proposal A allows the value of property to be adjusted for "additions" without regard to the stated limit.[1]

### II. BASIC FACTS AND PROCEDURAL HISTORY

Toll Northville and Biltmore Wineman (the developers) are engaged in developing real property located in Northville Township. In tax year 2001, the taxable

---

[1] See *WPW Acquisition Co v City of Troy*, 466 Mich 117, 119; 643 NW2d 564 (2002).

property consisted of 353 single-family residential lots and a large acreage parcel. By tax year 2002, the large acreage parcel had been divided into 184 residential condominium lots and 124 of the single-family lots had been sold, leaving only 229 of those lots subject to taxation. During those years, Toll Northville installed physical improvements, including a primary access road, streetlights, sewer service, water service, electrical service, natural gas service, telephone service, and sidewalks, for the single-family residential lots. Biltmore Wineman installed similar improvements for the condominium lots. Because of the improvements, the township increased the taxable value of the parcels for those tax years.

The developers appealed the tax assessments to the Michigan Tax Tribunal. The developers argued that the township did not have authority to increase the taxable value of the parcels because MCL 211.34d(1)(b)(*viii*), which, as written, purports to increase the taxable value of real property because of the installation of public service improvements on the property, was unconstitutional. The Tax Tribunal, however, did not have jurisdiction to decide the constitutionality of the statute.[2] The Tax Tribunal hearing was held in abeyance pending a circuit court's declaratory judgment.

Toll Northville filed a complaint in circuit court, seeking a judgment declaring MCL 211.34d(1)(b)(*viii*) unconstitutional. Toll Northville supported its claim by analogy to MCL 211.34d(1)(b)(*vii*), which, according to Toll Northville, the Michigan Supreme Court declared unconstitutional because the term "addition" was already defined and had a known meaning before the

---

[2] See *Meadowbrook Village Assoc v Auburn Hills*, 226 Mich App 594, 596; 574 NW2d 924 (1997).

voters approved Proposal A.[3] Toll Northville contended that, under the same rationale, subsection viii was also an unconstitutional expansion of the term "addition." Toll Northville averred that, as the court of competent jurisdiction, the circuit court needed to decide the constitutionality of the statute in order for the Tax Tribunal to reach a decision on the taxable value of the property.

The township answered the complaint, stating that Toll Northville installed the subject additions at its expense and that the additions, which Toll Northville claimed were "made available" to the property, were located on land owned or previously owned by Toll Northville. And, although admitting that the constitutionality of MCL 211.34d(1)(b)(*viii*) was called into question by the Michigan Supreme Court, the township denied that the statute actually was unconstitutional. The township objected to Toll Northville's failure to add Biltmore Wineman to the action. In keeping with this contention, the township's only affirmative defense alleged that Toll Northville failed to join a necessary party. The circuit court later granted the township's motion for a compulsory joinder of Biltmore Wineman.

The developers moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact and that MCL 211.34d(1)(b)(*viii*) was unconstitutional as a matter of law. The developers argued that, under MCL 211.34d(1)(c)(*i*), the Township was prohibited from valuing as an addition any increased value attributable to the "platting, splits, or combinations of property." It was for this reason, the developers argued, that the township was instead relying on the definition of additions for public services, as found in subsection viii. But,

---

[3] *WPW Acquisition Co, supra.*

the developers argued, that definition was unconstitutional because defining public services as "additions" was inconsistent with the definition of "additions" before the passage of Proposal A. The developers pointed out that before Proposal A was approved, the term "additions" was understood only to mean "new construction or a physical addition of equipment or furnishings."[4] The developers asserted that public services did not fall within the scope of "new construction or a physical addition of equipment or furnishings," noting that "new construction" was separately defined by the statute.

The township moved for summary disposition under MCR 2.116(C)(8), arguing that the term "additions" did include the installation of public services before the enactment of Proposal A. According to the township, public services constituted "new construction" or the "physical addition of equipment or furnishings," and therefore fell within the definition of "additions" as defined by MCL 211.34d(1)(a) before the enactment of Proposal A. The township also argued that *WPW Acquisition Co v City of Troy*,[5] the case on which the developers relied, was distinguishable. According to the township, a change in the rate of occupancy, as referred to in MCL 211.34d(1)(b)(*vii*), clearly could not fit within the scope of "new construction or a physical addition of equipment or furnishings." However, the township asserted, the installation of public services was clearly capable of fitting within the scope of both "new construction" and "a physical addition of equipment or furnishings." The township pointed out that, even before Proposal A was approved, the general practice of

[4] MCL 211.34d(1)(a).

[5] 466 Mich 117; 643 NW2d 564 (2002).

state assessors was to treat the installation of improvements like roadways, sewers, and walks, as "additions."

The circuit court granted the Michigan Townships Association (MTA) and the Michigan Municipal League (MML) leave to file a brief amicus curiae in support of the township. The MTA and the MML argued that the term "additions," as defined by MCL 211.34d(1)(b)(*viii*) to include public services, was consistent with the established meaning of "additions" at the time that term was added to Proposal A.

After hearing oral arguments on the motions for summary disposition, the circuit court issued its written opinion and order granting the developers summary disposition and denying the township summary disposition. The circuit court concluded that "additions . . . means improvements and equipment that actually become part of the land in question in the sense that they are attached or affixed to it." The circuit court then considered, as a "complicating factor," the fact that the subject parcels were part of a subdivision, and concluded as follows:

> If upon approval title resides with the municipality, these improvements cannot be included in valuing the private party's property. This was the understanding in 1994, and we are bound by it now. This conclusion accords with the purpose of Proposal A: to restrict increases in property taxes to situations in which the owner decides to add improvements . . . .

The township now appeals.

### III. ACTUAL CONTROVERSY

The township argues that the Tax Tribunal has no jurisdiction or authority to grant relief in this case because the underlying tax appeal covers tax years 2001 and 2002 but the alleged "additions" to the taxable

value were made in tax year 2000.[6] Thus, the township argues, there is no actual controversy for this Court to resolve.

The township did not raise this argument below. Indeed, the township conceded at oral argument that, in its answer to Toll Northville's complaint, it admitted the existence of an actual controversy between the parties and that the circuit court had the authority under MCR 2.605 to adjudicate the matter and enter a declaratory judgment. The general rule provides that this issue is not preserved and that it need not be addressed.[7] However, jurisdictional defects may be raised at any time, even if raised for the first time on appeal.[8] And an issue may be raised for the first time on appeal if its consideration " 'is necessary to a proper determination of a case.' "[9] Therefore, we address this issue to the extent that the township's jurisdictional challenge bears on this Court's ability to assess the merits of the developers' constitutional argument.

At oral argument, the township explained that it is challenging the Tax Tribunal's jurisdiction in light of *Springhill Assoc v Shelby Twp*[10] and *Leahy v Orion Twp*.[11] According to the township, under the authority

[6] Under MCL 211.2(2), the taxable status of real property for a tax year "shall be determined as of each December 31 of the immediately preceding year, which is considered the tax day . . . ."  For example, tax year 2000 took into account any improvements made during 1999, tax year 2001 took into account any improvements made during 2000, etc.

[7] *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

[8] *Smith v Smith*, 218 Mich App 727, 729-730; 555 NW2d 271 (1996).

[9] *Prudential Ins Co v Cusick*, 369 Mich 269, 290; 120 NW2d 1 (1963), quoting *Dation v Ford Motor Co*, 314 Mich 152, 160; 22 NW2d 252 (1946).

[10] *Springhill Assoc v Shelby Twp*, unpublished opinion per curiam of the Court of Appeals, issued December 11, 2003 (Docket No. 247100).

[11] *Leahy v Orion Twp*, 269 Mich App 527; 711 NW2d 438 (2006).

of those two cases, we should dismiss this action and vacate the circuit court's decision because, even if we were to declare MCL 211.34d(1)(b)(*viii*) unconstitutional, the Tax Tribunal would have no authority to change the 2001 and 2002 tax assessments on the basis of additions that occurred in tax year 2000. While we acknowledge that *Springhill* and *Leahy* limit the Tax Tribunal's authority to decide the accuracy and methodology of assessments to the tax years timely appealed, we do not agree that those decisions limit our ability to resolve the constitutional issue at hand.

"[T]he Tax Tribunal has original and exclusive jurisdiction over those tax issues which involve the accuracy and methodology of the property tax assessment."[12] Under MCL 205.735(2), "[t]he jurisdiction of the tribunal in an assessment dispute is invoked by a party in interest, as petitioner, filing a written petition on or before June 30 of the tax year involved." Failure to correct assessments and evaluations in the manner and time provided by statute precludes later attack on the assessment.[13] The Tax Tribunal properly grants summary disposition to a respondent on the basis of the lack of subject-matter jurisdiction when the petitioner fails to timely file the petition.[14]

However, this is not an appeal from the Tax Tribunal. Although the developers originally sought the Tax Tribunal's review of certain tax assessments, they brought *this case* as an original declaratory action in the circuit court because "the Tax Tribunal does not have jurisdic-

---

[12] *Johnston v Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989); see MCL 205.731.

[13] *Auditor General v Smith*, 351 Mich 162, 168; 88 NW2d 429 (1958).

[14] *Kelser v Dep't of Treasury*, 167 Mich App 18, 20-21; 421 NW2d 558 (1988).

tion over constitutional questions and has no authority to hold statutes invalid."[15] The circuit court has jurisdiction to consider constitutional matters.[16] Indeed, in its brief on appeal, the township has conceded that we have jurisdiction to review the circuit court's determination that MCL 211.34d(1)(b)(*iii*) is unconstitutional.[17]

Nevertheless, according to the township, any ruling that we render on the constitutionality of MCL 211.34d(1)(b)(*viii*) would be advisory because of the Tax Tribunal's alleged inability to change its prior assessments at this time. We disagree. Indeed, we reach the opposite conclusion: rendering a decision on the Tax Tribunal's jurisdictional authority in this case, as the township wishes us to do, would be the advisory opinion because, again, this is not an appeal from the Tax Tribunal. In other words, the Tax Tribunal has not yet issued a ruling so as to invoke our review of its jurisdiction. The determination whether jurisdiction exists to hear the developers' challenge to the actual tax assessment is based on fact-finding within the province of the Tax Tribunal.[18]

Thus, we conclude that this constitutional challenge was properly presented to the circuit court as a declaratory action between the interested parties asserting adverse claims,[19] and, accordingly, it is properly presented to us for review.

---

[15] *WPW Acquisition Co v City of Troy (On Remand)*, 254 Mich App 6, 8; 656 NW2d 881 (2002).

[16] *Id.*

[17] See MCL 600.308(1)(a); MCR 7.203(A)(1).

[18] See *WPW Acquisition Co (On Remand)*, *supra* at 10.

[19] *Associated Builders v Dep't of Consumer & Industry Services Director*, 472 Mich 117, 126; 693 NW2d 374 (2005).

## IV. CONSTITUTIONAL INTERPRETATION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling in a declaratory judgment action,[20] questions of constitutional construction,[21] and the constitutionality of a statute.[22]

### B. THE MEANING OF "ADDITIONS"

"[C]onstruing the meaning of constitutional language is a basic judicial function."[23] However, "[w]hen compelled to make a constitutional pronouncement, the court must do so with great circumspection and trepidation, with language carefully tailored to be no broader than that demanded by the particular facts of the case rendering such a pronouncement necessary."[24] "The constitutionality of a law must be tested by what may be done under it without offending any express provision of the constitution."[25] " '[I]f a constitutional phrase is a technical legal term or a phrase of art in the law, the phrase will be given the meaning that those sophisticated in the law understood at the time of enactment unless it is clear from the constitutional language that some other meaning was intended.' "[26]

---

[20] *Taylor v Blue Cross & Blue Shield*, 205 Mich App 644, 649; 517 NW2d 864 (1994).

[21] *Studier v Michigan Pub School Employees' Retirement Bd*, 260 Mich App 460, 467; 679 NW2d 88 (2004).

[22] *Gilson v Dep't of Treasury*, 215 Mich App 43, 49; 544 NW2d 673 (1996).

[23] *WPW Acquisition Co, supra* at 125.

[24] *Council of Organizations & Others for Ed About Parochiaid v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997).

[25] *Id.* at 571.

[26] *WPW Acquisition Co, supra* at 123, quoting *Michigan Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 223; 634 NW2d 692 (2001).

The Michigan Constitution, Const 1963, art 9, § 3, as amended by Proposal A, states as follows:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. *For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred.* When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates. A law that increases the statutory limits in effect as of February 1, 1994 on the maximum amount of ad valorem property taxes that may be levied for school district operating purposes requires the approval of 3/4 of the members elected to and serving in the Senate and in the House of Representatives. [Emphasis added.]

## The Proposal A language

> operates to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the "taxable value" of the property may increase each year, even if the "true cash value," that is, the actual market value, of the property rises at a greater rate.[27]

---

[27] *WPW Acquisition Co, supra* at 121-122.

"However, a qualification is made to allow adjustments for 'additions.' "[28]

As in *WPW Acquisition Co*, "[r]esolution of the present case turns on the meaning of the term 'additions' as used in the emphasized constitutional language."[29]

> When Proposal A was adopted (that is, on March 15, 1994), the General Property Tax Act defined "additions" to mean "all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment rol[l]."[30]

After the Proposal A amendment, the Legislature enacted several amendments of MCL 211.34d, including MCL 211.34d(1)(b)(*viii*), which states in pertinent part:

> (1) As used in this section or section 27a, or section 3 or 31 of article IX of the state constitution of 1963:
>
> * * *
>
> (b) For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all of the following:
>
> * * *
>
> (*viii*) Public services. As used in this subparagraph, "public services" means water service, sewer service, a primary access road, natural gas service, electrical service, telephone service, sidewalks, or street lighting. For pur-

---

[28] *Id* at 122.

[29] *Id.*

[30] *Id.*; see MCL 211.34d(1)(a) ("For taxes levied before 1995, 'additions' means all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment roll.").

poses of determining the taxable value of real property under section 27a, the value of public services is the amount of increase in true cash value of the property attributable to the available public services multiplied by 0.50 and shall be added in the calendar year following the calendar year when those public services are initially available.

The developers argue that the constitutionality of MCL 211.34d(1)(b)(*viii*) was called into question by *WPW Acquisition Co*, which held that subsection vii was unconstitutional because that subsection defined "additions" in a way that was inconsistent with the definition of "additions" before the passage of Proposal A. Although the developers acknowledge that this case addresses a different subsection (public services) than that considered in *WPW Acquisition Co* (increase in occupancy), they argue that the same rationale applies.

In *WPW Acquisition Co*, the Michigan Supreme Court addressed the constitutionality of MCL 211.34d(1)(b)(*vii*), which, as written, purported to increase the taxable value of property because of an increase in the occupancy rate of the property. The Court concluded that subsection vii was unconstitutional because it defined "additions" for purposes of article 9, § 3 "in a way that is inconsistent with the established meaning of that term at the time that it was added to this constitutional provision by the passage of Proposal A."[31] The Court explained, "At the time that Proposal A was submitted to the voters, the General Property Tax Act established 'additions' as a technical legal term in the area of property taxation[, and] . . . that statutory definition of 'additions' simply did not encompass any increase in the value of property due to increased occupancy by tenants."[32]

---

[31] *WPW Acquisition Co, supra* at 123.

[32] *Id*. at 123-124.

The Court went on to explain that there was no indication in the purpose of the constitutional amendment that "another more expansive meaning of 'additions' was intended."[33] According to the Court,

[t]he amendment generally was to not allow the taxable value to increase above the "cap" regardless of any larger increase in true market value until the property was transferred. The blanket bar was tempered, however, by allowing for adjustments for additions. If what the amendment had done was empower the Legislature, at its will, to define an increase in the value of property (such as an increase due to increased occupancy) to be classified as an "addition," then the property tax limiting thrust of § 3 would be, or could soon be if the Legislature desired it, thwarted.[34]

The Court rejected the notion that "the drafters and ratifiers . . . desired to place a convenient sabotaging clause within this tax limitation amendment that could be triggered whenever the Legislature chose."[35] The Court concluded that "there was no principled way to determine the meaning of 'additions' as used in § 3 except by considering it as a term of art that must be construed in conformity with the meaning of 'additions' as used in the General Property Tax Act at the time that Proposal A was adopted."[36] Accordingly, the Court held "that MCL 211.34d(1)(b)(vii) is unconstitutional because it purports to define the term 'additions' for purposes of § 3 in a way that violates the proper meaning of that term."[37]

In other words, the *WPW Acquisition Co* Court concluded that subsection vii was unconstitutional be-

---

[33] *Id.* at 124.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 125.

[37] *Id.* at 126-127.

cause, by defining "additions" as including a change in occupancy rate, it purported to define the term "additions" for purposes of Const 1963, art 9, § 3 in a way that violated the proper meaning of that term—increases in value caused by "new construction" or "a physical addition of equipment or furnishings."

Here, the township relied on MCL 211.34d(1)(b)(*viii*) to increase the developers' taxable value for the real property at issue in consideration of the increased value caused by the public service improvements. Thus, at issue here is the constitutionality of MCL 211.34d(1)(b)(*viii*), which, as written, purports to increase the taxable value of property because of the installation of public service improvements on the real property. More specifically, the issue before this Court is whether the installation of public service improvements on real property constituted "additions" as provided for by article 9, § 3 of the Michigan Constitution before the Proposal A amendment. More specifically still, the issue to be decided is whether the installation of public services falls within the scope of "new construction" or "a physical addition of equipment or furnishings," as those terms were understood before the Proposal A amendment.

The township argues that installation of roads, sewers, street lighting, and utility services on the developers' land clearly falls within the scope of new construction and the physical addition of equipment or furnishings. These types of additions, the township argues, increase the value of the developers' land and should be taxed accordingly. The developers argue that, under the township's erroneous interpretation, any physical improvement in the community or on neighboring land that affects a property's value would be a taxable "addition." Thus, the developers argue, the

term "additions" was only meant to apply to improvements placed on or affixed to the taxpayer's land.

The term "additions" is ambiguous. There can be no dispute that, before Proposal A, the term was intended to mean "all increases in value caused by new construction or a physical addition of equipment or furnishings." But that definition, taken alone, is ambiguous. As the parties' arguments evidence, reasonable minds could disagree regarding whether certain improvements constructed on or physically connected to property, and which increase the value of that property, constitute taxable "additions."

As the circuit court recognized, the issue in this case is further complicated by the fact that the property at issue is subdivided land. That is, the improvements were installed on the developers' land and paid for by the developers, but the improvements were installed under the direction of the township and the lots were later individually sold to private parties.

However, a review of the purpose of Proposal A, the General Property Tax Act as a whole, and other relevant statutory provisions, leads to the conclusion that "additions," as a technical legal term, was meant to apply to improvements and added equipment that become part of the taxable land itself—that is, improvements that become part of the real property as structures or fixtures.

As the circuit court noted, the purpose of Proposal A was to set out a new assessment method that separated property valuations from factors outside the individual property owner's control—"inflation, the demand for housing, changes in the community." We agree with the circuit court that "it makes little sense to let in through the back door of 'additions and losses' changes like

better public services that the Proposal was designed to exclude in the first place."

Turning to MCL 211.34d(1)(b), that provision, even taken alone, supports the conclusion that "additions" was not meant to include public service improvements. MCL 211.34d(1)(b) purports to set forth a list of several items that serve as "additions." One of the items is "new construction," which is defined to include "the physical addition of equipment or furnishings."[38] This category clearly tracks the pre-Proposal A definition of "additions." That the Legislature found it necessary to set forth a separate category for "public services" leads to the conclusion that public service improvements are not, and never were, understood to fall within the scope of "new construction or a physical addition of equipment or furnishings."

A general tax assessment for public service improvements is also inconsistent with the General Property Tax Act as a whole. Under the act, "all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation."[39] Real property is defined, in part, as: "All land within this state, all buildings and fixtures on the land, and all appurtenances to the land, except as expressly exempted by law."[40] And the assessment on that real property is levied on the owner of the real property.[41] On the basis of these provisions, we conclude that "addi-

[38] MCL 211.34d(1)(b)(*iii*).

[39] MCL 211.1.

[40] MCL 211.2(1)(a).

[41] MCL 211.3 states:

Real property shall be assessed in the township or place where situated, to the owner if known, and also to the occupant, if any; if the owner be not known, and there be an occupant, then to such

tions" to real property should only take into account improvements that the landowner makes on the land itself.

The definition of real property further recognizes that certain land may be exempted from taxation, and such an exemption for public streets or roadways is set forth in MCL 211.7e(2), which states: "The value of land over the surface of which is located a public right of way shall not be considered when the real property is being assessed." Thus, it is clear that MCL 211.34d(1)(b)(*viii*) is unconstitutional to the extent that it purports to take a public "primary access road" into account for the purposes of assessing taxable value.

With respect to other types of public improvements —water service, sewer service, natural gas service, electrical service, telephone service—the General Property Tax Act establishes that the equipment, structures, and easements that facilitate those public services are assessed as personal property to the utility companies that own them.[42] Michigan case law also evidences that

---

occupant, and either or both shall be liable for the taxes on said property, and if there be no owner or occupant known then as unknown.

[42] MCL 211.8 states:

For the purposes of taxation, personal property includes all of the following:

* * *

(g) The personal property of gas and coke companies, natural gas companies, electric light companies, waterworks companies, hydraulic companies, and pipe line companies transporting oil or gas as public or common carriers, to be assessed in the local tax collecting unit in which the personal property is located. *The mains, pipes, supports, and wires of these companies, including the supports and wire or other line used for communication purposes in the operation of those facilities, and the rights of way and the*

ownership of public utility wires, pipes, etc., remains with the utility company even when those structures and equipment are placed on private land, and that, accordingly, they should be taxed against the utility companies. In *Continental Cablevision of Michigan, Inc v Roseville*, the Michigan Supreme Court stated that "from the language of [MCL 211.8(g)], ordinary utility lines and supports are to be assessed as personal property of the utility company."[43] The Court also noted that the State Tax Commission had earlier held that pipelines running from the customers' property lines to the meters attached to the homes were taxable against a gas company.[44] Therefore, to allow the township to tax both the utility companies and the owners of the real

*easements or other interests in real property by virtue of which the mains, pipes, supports, and wires are erected and maintained, shall be assessed as personal property in the local tax collecting unit where laid, placed, or located. . . .* None of the property assessable as personal property under this subdivision shall be affected by any assessment or tax levied on the real property through or over which the personal property is laid, placed, or located, nor shall any right of way, easement, or other interest in real property, assessable as personal property under this subdivision, be extinguished or otherwise affected in case the real property subject to assessment is sold in the exercise of the taxing power.

Further, MCL 211.34c(3)(e)(*i*) states: "Utility personal property includes . . . [e]lectric transmission and distribution systems, substation equipment, spare parts, gas distribution systems, and water transmission and distribution systems." And MCL 211.13(1) states: "All tangible personal property, except as otherwise provided in this act, shall be assessed *to the owner of that tangible personal property*, if known, in the local tax collecting unit in which the tangible personal property is located on tax day as provided in section 2."

[43] *Continental Cablevision of Michigan, Inc v Roseville*, 430 Mich 727, 745; 425 NW2d 53 (1988).

[44] *Id.* at 748-749, citing *Michigan Consolidated Gas Co v Michigan Tax Comm*, 4 Mich App 33; 143 NW2d 606 (1966), on remand to the State Tax Commission, *In re Appeal No 1524 of Michigan Consolidated Gas Co*, unpublished proposed order issued June 6, 1967.

property where the public service improvements are located constitutes impermissible double taxation.

In sum, we conclude that the installation of public services does not fall within the scope of "new construction" or "a physical addition of equipment or furnishings" as those terms were understood before the Proposal A amendment. That is, public service improvements on real property do not constitute "additions" as provided for by article 9, § 3 of the Michigan Constitution before the Proposal A amendment. Therefore, MCL 211.34d(1)(b)(*viii*) is unconstitutional as it purports to increase the taxable value of property because of the installation of public service improvements on the real property.

Having concluded that "additions" was meant to apply to improvements or fixtures attached to the taxpayer's real property—not public service improvements, even if connected to the land—it would seem that the public service improvements at issue in this case should nevertheless be assessable against the developers, who owned the land on which the public service improvements were installed. Indeed, it is on this ground that the township argues that the developers should be taxed for the improvements, at the very least, for the years during which the developers still owned the taxable land. However, such a conclusion would be inconsistent with Proposal A, the General Property Tax Act, the Land Division Act,[45] and the Northville Code of Ordinances.

Under MCL 211.34d(1)(c) of the General Property Tax Act, "additions do not include increased value attributable to any of the following: (*i*) Platting, splits, or combinations of property. (*ii*) A change in the zoning

---

[45] MCL 560.101 *et seq.*

of property." As the developers point out, a developer will often rezone, plat, and install public services all in the same tax year. Thus, a finding that subsection b(*viii*) is constitutional would create problems when trying to determine how much of a particular tax year's increased value is due to the public services improvements, or to the platting and zoning. Stated differently, allowing public services to be assessed as taxable "additions" would subvert the prohibition on taxation of intangibles such as platting and zoning because the township could just claim that the increased value was only due to the public services, although the actual increased value was really attributable to the platting and zoning.

Further, under the Land Division Act, the installation of public service improvements is statutorily required of subdivision developers.[46] And approval of the partitioning or splitting of a parcel is conditioned on "adequate easements for public utilities from the parcel to existing public utility facilities."[47] The Northville Code of Ordinances provides similar requirements.[48]

---

[46] MCL 560.190 ("The proprietor shall provide public utility easements in accordance with the provisions of section 139.").

[47] MCL 560.109(1)(g); see also MCL 560.119 ("The proprietor shall submit 2 copies of the preliminary plat to the county plat board and to the public utilities serving the area for informational purposes.").

[48] Northville Ordinance § 78-139 states:

The proprietor shall install and construct in a new subdivision such utilities and improvements in accordance with the standards and requirements described in this section or furnish a bond, which is acceptable to the city council, to guarantee the improvements.

(1) *Paving of streets.* The concrete paving of all streets to their full width as required by the city engineering standards, intersections and sidewalks, including curbs on all streets and intersections to the approved grade. In all cases where a full street has

Thus, the installation of public service improvements should be considered part of the mandatory process of platting or splitting land, and, in keeping with, MCL 211.34d(1)(c), excluded from assessment as "additions."

been dedicated, the proprietor must install all improvements, including sidewalks along both sides for the full length of the street.

(2) *Storm sewers*. The installation of trunk line and lateral storm sewers and storm inlets, and any other secondary appurtenances, such as pumping stations.

(3) *Sanitary sewers*. The installation of trunk line and lateral sanitary sewers with house connections to the property line to the nearest lateral or trunk line sewer, and any other necessary appurtenances, as pumping stations.

(4) *Water mains; fire hydrants*. The installation of water mains with house connections to the property line to the mains, and the installation of fire hydrants, and any other necessary appurtenances.

* * *

(6) *Street lighting*. Ornamental street lighting service by underground conductors shall be provided throughout the subdivision in conformity with city engineering standards and construction practices prescribed by the utility furnishing such service and the state public service commission.

(7) *Underground wiring*. The proprietor shall provide for all local distribution lines within a subdivision (exclusive of main supply lines, perimeter feed lines and necessary surface facilities) for telephone and electric service to be placed underground entirely throughout a subdivision area, and such conduits or cables shall be placed within private easements provided to such service companies by the proprietor or within dedicated public ways. Those telephone and electrical facilities placed in dedicated public ways shall be planned as not to conflict with other underground utilities. All telephone and electrical facilities shall be constructed in accordance with standards of construction approved by the state public service commission. All drainage and underground utility installations which traverse privately owned property shall be protected by easements granted by the proprietor of the plat.

Taxation must be uniform, and, as the circuit court reasoned, "allowing the property tax burden to vary according to whether individual lots of the subdivision were sold would be little different from letting the burden vary according to whether an office building gained more tenants—exactly the scenario in *WPW Acquisitions*." There is no indication that "the drafters and ratifiers . . . desired to place a convenient sabotaging clause within this tax limitation amendment that could be triggered whenever the Legislature chose."[49]

Thus, we conclude that although a development company owns the land on which the public service improvements are installed at the time of their installation, because title to these improvements ultimately resides with the municipality or a utility company, these improvements should not be included in the taxable value of the property.

We further note that to the extent that the public service improvements increase the true cash value of the land, the tax revenue for that increased value will be realized when the lots are transferred to the private owners. As required by Const 1963 art 9, § 3, "[w]hen ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value." Stated differently, the increased value for public service improvements should be realized just as any other community improvements are realized. For example, public service improvements are analogous to better community resources, like a better school system, which increase home values across the community that are realized when the homes are sold for higher prices, at which time the true cash value assessments can be

---

[49] *WPW Acquisition Co, supra* at 124.

adjusted accordingly. As stated in *WPW Acquisition Co*, "The amendment generally was to not allow the taxable value to increase above the 'cap' regardless of any larger increase in true market value until the property was transferred."[50] Further, a governmental entity may still recover the costs of a public service improvement through a special assessment.[51]

Therefore, we conclude that MCL 211.34d(1)(b)(*viii*) is unconstitutional because it is inconsistent with the meaning of the term "additions" as established by Proposal A. And, accordingly, we conclude that to the extent the township relied on this unconstitutional statutory provision to increase the assessment on the parcels at issue, solely on the basis of the subject public service improvements, it violated the cap on annual increases in taxable value imposed by Const 1963, art 9, § 3.

Affirmed.

---

[50] *Id.*

[51] See *Kadzban v Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993) ("Street and utility improvements are common bases for special assessments.").