**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED FEBRUARY 5, 2008

TOLL NORTHVILLE LTD and
BILTMORE WINEMAN LLC,

Plaintiffs-Appellees,

v

No. 132466

TOWNSHIP OF NORTHVILLE,

Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue are: (1) whether MCL 211.34d(1)(b)(*viii*) is constitutional and (2) whether public-service improvements, such as water service, sewer service, or utility service, constitute "additions" to property within the meaning of Const 1963, art 9, § 3, as amended by Proposal A. We affirm in part the judgment of the Court of Appeals that held that MCL 211.34d(1)(b)(*viii*) is unconstitutional because it is inconsistent with the meaning of "additions" as used in Const 1963, art 9, § 3 and that public-service improvements consisting of public infrastructure located on utility easements or land that ultimately becomes public do not

constitute "additions" to property within the meaning of that constitutional provision. However, we vacate in part the judgment of the Court of Appeals that incorrectly defined the term "ambiguous" and mistakenly concluded that taxing property on the basis of value added from available public services and also taxing utility lines as personal property of the utility companies results in "double taxation."

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Toll Northville and Biltmore Wineman LLC are engaged in developing real property. During the tax years 2001 and 2002, plaintiffs invested millions of dollars to install infrastructure consisting of physical improvements, such as a primary access road, streetlights, sewer service, water service, electrical service, natural gas service, telephone service, and sidewalks for condominium and single-family residential lots located in Northville Township. This infrastructure development is required before a final plat for a subdivision can be approved. Relying on MCL 211.34d(1)(b)(*viii*), defendant Northville Township increased plaintiffs' property-tax assessments for the tax years 2001 and 2002 on the basis of the enhanced value resulting from the public-service improvements that were made to the land.

Plaintiffs challenged their assessments before the Michigan Tax Tribunal, claiming that the assessment increases violated Const 1963, art 9, § 3. The Michigan Tax Tribunal stayed its proceedings so that this declaratory action regarding the constitutionality of the statute could proceed in circuit court. The

circuit court held that MCL 211.34d(1)(b)(*viii*) is unconstitutional because it taxes improvements of real property beyond the meaning of "additions" when Proposal A was passed. The circuit court determined that plaintiffs could not be taxed on the basis of the public-service improvements because the improvements were not attached to the separate lots and were either dedicated to the municipality or given to public utilities.

The Court of Appeals affirmed the trial court's judgment, concluding that the term "additions" as used in Const 1963, art 9, § 3 refers to improvements that become part of the real property as structures or fixtures, but not to public-service improvements. *Toll v Northville, Ltd v Northville Twp*, 272 Mich App 352; 726 NW2d 57 (2006). The Court of Appeals concluded that, although at the time of the installation of the public-service improvements, plaintiffs, as developers, owned the parcel of land "on which the public service improvements are installed," plaintiffs did not owe property tax on the improvements because title to these improvements would ultimately vest in the municipality or a utility company. *Id.* at 375. We granted defendant's application for leave to appeal. 478 Mich 863 (2007).[1]

---

[1] We directed the parties to address "the constitutionality of MCL 211.34d(1)(b)(viii) and whether 'public service' improvements (such as water service, sewer service, utility service) are 'additions' to the property within the meaning of Proposal A, Const 1963, art 9, § 3, which allows for increased taxation of the property."

3

## II. STANDARD OF REVIEW

A trial court's ruling in a declaratory action is reviewed de novo. *Theatre Control Corp v Detroit*, 365 Mich 432, 436; 113 NW2d 783 (1962). Matters of constitutional and statutory interpretation and questions concerning the constitutionality of a statutory provision are also reviewed de novo. *Goldstone v Bloomfield Twp Pub Library*, 479 Mich 554, 558; 737 NW2d 476 (2007); *Phillips v Mirac, Inc*, 470 Mich 415, 422; 685 NW2d 174 (2004); *Halloran v Bhan*, 470 Mich 572, 576; 683 NW2d 129 (2004). When interpreting constitutional provisions, our primary objective "'is to realize the intent of the people by whom and for whom the constitution was ratified.'" *Studier v Michigan Pub School Employees' Retirement Bd*, 472 Mich 642, 652; 698 NW2d 350 (2005), quoting *Wayne Co v Hathcock*, 471 Mich 445, 468; 684 NW2d 765 (2004). In realizing this intent, we apply the plain meaning of terms used in the constitution unless technical legal terms were employed. *Phillips*, *supra* at 422.

> "[I]f a constitutional phrase is a technical legal term or a phrase of art in the law, the phrase will be given the meaning that those sophisticated in the law understood at the time of enactment unless it is clear from the constitutional language that some other meaning was intended." [*WPW Acquisition Co v City of Troy*, 466 Mich 117, 123; 643 NW2d 564 (2002), quoting *Mich Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 223; 634 NW2d 692 (2001).]

Statutes are presumed constitutional unless the unconstitutionality is clearly apparent. *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).

## III. ANALYSIS

This appeal addresses legislation enacted after Michigan voters adopted Proposal A in 1994, which amended article 9, § 3 of the Michigan Constitution. As amended by Proposal A, Const 1963, art 9, § 3 provides, in relevant part:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. *For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred.* When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value. [Emphasis added.]

The purpose of Proposal A was

> to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the "taxable value" of the property may increase each year, even if the "true cash value," that is, the actual market value, of the property rises at a greater rate. However, a qualification is made to allow adjustments for "additions." [*WPW Acquisition Co*, *supra* at 121-122.]

Thus, as amended, the constitution caps general property tax increases during the course of a property owner's ownership, but permits additional taxation

based on increases in value arising from "additions" in the year they are added to the land.

> When Proposal A was adopted . . . , the General Property Tax Act defined "additions" to mean
>
> "all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment role." [*Id.* at 122, quoting the text of MCL 211.34d(1)(a) in effect at the time of Proposal A's adoption.]

After Proposal A was adopted, the Legislature enacted several amendments of MCL 211.34d.  As it now stands, MCL 211.34d provides, in pertinent part:

> (1) As used in this section or section 27a, or section 3 or 31 of article IX of the state constitution of 1963:
>
> (a) For taxes levied before 1995, "additions" means all increases in value caused by new construction or a physical addition of equipment or furnishings, and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment roll.
>
> (b) For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all of the following:
>
> * * *
>
> (*viii*) Public services. As used in this subparagraph, "public services" means water service, sewer service, a primary access road, natural gas service, electrical service, telephone service, sidewalks, or street lighting. For purposes of determining the taxable value of real property under section 27a, the value of public services is the amount of increase in true cash value of the property attributable to the available public services multiplied by 0.50 and shall be added in the calendar year following the calendar year when those public services are initially available.

6

The issue is the constitutionality of MCL 211.34d(1)(b)(*viii*), which, as written, defines "public services" as "additions" and, therefore, would allow for the taxation of the value added from the installation of public-service improvements, which are "water service, sewer service, a primary access road, natural gas service, electrical service, telephone service, sidewalks, or street lighting." We agree with the analysis and the decision of the Court of Appeals, which declared MCL 211.34d(1)(b)(*viii*) unconstitutional. The Court of Appeals correctly concluded that the mere installation of public-service improvements on public property or on utility easements does not constitute a taxable "addition"-- as that term was understood when the public adopted Proposal A-- in this instance, involving infrastructure improvements made to land destined to become a residential subdivision.

Contrary to defendant's argument, the definition of "additions" provided by the enabling legislation for the Headlee Amendment is not pertinent to this case. The Headlee Amendment, adopted in 1978, limited local property taxation by controlling changes in the tax base, i.e., it generally placed an inflation-rate cap on the increase of taxes by the local taxing authorities with regard to all property combined within a unit of local government and without regard to any specific parcel of property, but it excluded the value of new construction and improvements. Const 1963, art 9, § 31. The enabling legislation for the Headlee Amendment defined "[n]ew construction and improvements" as "additions less losses." MCL 211.34d(1)(e), as added by 1978 PA 532. "Additions" was defined

7

as "all increases in value caused by new construction, improvements caused by new construction . . . or a physical addition of equipment or furnishings . . . ." MCL 211.34d(1)(a), as added by 1978 PA 532.

However, this does not reflect the meaning the term "additions" had when Proposal A was later adopted in 1994. In 1993, the Legislature enacted 1993 PA 145, which amended the definition of "additions" to include "all increases in value caused by new construction or a physical addition of equipment or furnishings," thus discarding any reference to "improvements caused by new construction." MCL 211.34d(1)(a), as amended by 1993 PA 145. Thus, for purposes of resolving the instant case, this later definition superseded the 1978 definition. The Court of Appeals properly recognized that the 1993 definition reflected the meaning of the term "additions" as understood by those sophisticated in the law at the time Proposal A was adopted and correctly based its analysis on this later definition.

Moreover, because the objectives of the Headlee Amendment and Proposal A are different, the definition of "additions" under the Headlee Amendment is of limited relevance in determining the meaning of "additions" under Proposal A. The Headlee Amendment generally placed an inflation-rate cap on tax increases for all property located within a local government unit, without regard to any specific parcel, while Proposal A placed an inflation-rate cap on tax increases for specific parcels. Thus, in the context of the Headlee Amendment, public-service improvements necessarily are physically located on the property to be taxed. By

8

contrast, in the context of Proposal A, public-service improvements are not physically located on the residential property to be taxed.

Therefore, we affirm the judgment of the Court of Appeals that MCL 211.34d(1)(b)(*viii*) is unconstitutional because it is inconsistent with the meaning of the term "additions" as used in Proposal A and that public-service improvements do not constitute "additions" to property within the meaning of Proposal A.[2]

---

[2] However, we vacate two parts of the Court of Appeals judgment that we believe are in error. First, we believe that the Court significantly erred when it defined "ambiguous." *Toll Northville, supra* at 368. A term is ambiguous "when it is *equally* susceptible to more than a single meaning," *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004), not when reasonable minds can disagree regarding its meaning. Second, we believe that the Court mistakenly concluded that taxing property on the basis of the value added by the availability of public services and also taxing utility lines as personal property of the utility companies results in "double taxation." *Toll Northville, supra* at 371-372. To the contrary, the value of physical lines, i.e., wires, pipes, etc., as tangible personal property is distinguishable from the market value added by the availability of utility services. The distinction is important because value added from access to services is taxable to the extent that such services increase market value. Although installation of a public utility line may not be taxed as an addition in a case such as this, the value of such services will be incorporated into the value of each individual home at the time it is built or sold. See *id.* at 375.

## IV. CONCLUSION

Because public-service improvements located on public easements or land that ultimately becomes public do not constitute "additions," as that term was understood when Proposal A was enacted, we affirm the judgment of the Court of Appeals that MCL 211.34d(1)(b)(*viii*) is unconstitutional.

Affirmed in part and vacated in part.

Clifford W. Taylor
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

TOLL NORTHVILLE LTD and
BILTMORE WINEMAN LLC,

      Plaintiffs-Appellees,

v                                             No. 132466

TOWNSHIP OF NORTHVILLE,

      Defendant-Appellant.

_____

CAVANAGH, J. (*concurring*).

I agree with this Court's conclusion that MCL 211.34d(1)(b)(*viii*) is unconstitutional and that public-service improvements are not "additions" to the property within the meaning of that term in Const 1963, art 9, § 3, as amended by Proposal A. I write to address this Court's comments on the method for determining ambiguity. The opinion states that a "term is ambiguous 'when [the term] is equally susceptible to more than a single meaning,' *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004), not when reasonable minds can disagree regarding its meaning." *Ante* at 9 n 2. Inasmuch as this statement implies that there is one, and only one, valid method for determining ambiguity, I disagree.

In *Perez v Keeler Brass Co,* 461 Mich 602, 610; 589 NW2d 781 (2000), this Court concluded that the single, unclear term "refuses" was ambiguous.[1] In *People v Denio,* 454 Mich 691, 702; 564 NW2d 13 (1997), this Court concluded that the term "penalty" was ambiguous. This Court stated that ambiguity exists if "a statute is susceptible to more than one interpretation . . . ."[2] *Id.* at 699. Further, this Court noted that "a statute that is unambiguous on its face can be '"rendered ambiguous by its interaction with and its relation to other statutes."'"[3] *Id.,* quoting *People v Jahner*, 433 Mich 490, 496; 446 NW2d 151 (1989), quoting 2A Sands, Sutherland Statutory Construction, § 46.04, pp 86-87. In *Elias Bros Restaurants,*

---

[1] See also *Lansing Mayor*, *supra* at 175-176 (Cavanagh, J., dissenting); *Yellow Freight Sys, Inc v Michigan*, 464 Mich 21, 38; 627 NW2d 236 (2001) (Cavanagh, J., dissenting).

[2] See also, e.g., *ASAP Storage, Inc v City of Sparks*, ___ Nev ___, ___; 173 P3d 734, 739 (2007) (finding ambiguity when there is a "meaning that it is susceptible to 'two or more reasonable but inconsistent interpretations'") (citation omitted); *State v Fasteen*, 740 NW2d 60, 63 (ND, 2007) (stating that a "statute is ambiguous if it is susceptible to meanings that are different, but rational"); *State v Strode*, 232 SW3d 1, 12 (Tenn, 2007) (holding that a statute is ambiguous if it is "susceptible of two interpretations").

[3] See also, e.g., *FDA v Brown & Williamson Tobacco Corp,* 529 US 120, 132; 120 S Ct 1291; 146 L Ed 2d 121 (2000) (stating that ambiguity may only become apparent when words or phrases are placed in the context of the statutory framework); *Brown v Gardner*, 513 US 115, 118; 115 S Ct 552; 130 L Ed 2d 462 (1994) (stating that ambiguity is a "creature" of statutory context); *McLean v McLean*, 323 NC 543, 548; 374 SE2d 376 (1988) (determining that the ambiguity of the statute was revealed when compared to another statute).

2

*Inc v Treasury Dep't,* 452 Mich 144, 150; 549 NW2d 837 (1996), this Court concluded that a statute was ambiguous when applied to the facts presented.[4]

These valid, time-tested methods are valuable for statutory analysis in the complex legal and factual circumstances presented to any court.[5] These methods promote precision and facility in faithfully discerning legislative intent. They are equal in validity to the test this Court applies today. "Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." 2A Singer & Singer, Sutherland Statutes & Statutory Construction (7th ed), § 45:2, p 13.

The definition applied by the Court of Appeals is time-tested and proper. However, the operative concept is "reasonable." It does not matter if two parties argue vehemently for two different meanings of a word. It is an objective analysis. Therefore, though I believe that the test is proper, I believe the Court of Appeals applied it improperly in this case.

Michael F. Cavanagh

---

[4] See also, e.g., *State v Peterson*, 247 Wis 2d 871, 885; 634 NW2d 893 (2001) (stating that a statute may be unambiguous in one factual setting and ambiguous in another).

[5] "Accepted rules of statutory construction can provide helpful guidance in uncovering the most likely intent of the legislature." 2A Singer & Singer, Sutherland Statutes & Statutory Construction (7th ed), § 45:2, p 15.

S T A T E   O F   M I C H I G A N

SUPREME COURT

TOLL NORTHVILLE LTD and
BILTMORE WINEMAN LLC,

      Plaintiffs-Appellees,

v                                     No. 132466

TOWNSHIP OF NORTHVILLE,

      Defendant-Appellant.

_____

WEAVER, J. (*concurring in the result only*).

I would affirm the Court of Appeals judgment for the reasons stated in the

Court of Appeals opinion.[1]

                                    Elizabeth A. Weaver

---

[1] See *Toll Northville, Ltd v Northville Twp*, 272 Mich App 352; 726 NW2d 57 (2006).